800 F.2d 393
 Tamara Jo THIGPEN and Jo Ann Evelyn Kramber, as Guardian ad
Litem for Lisa Marie Kramber, a minor under the
age of eighteen (18) years, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 85-2007.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1986.
Decided Sept. 10, 1986.
 
 H. Fred Kuhn, Jr. (Joel D. Bailey, Moss, Bailey & Dore, P.A., Beaufort, S.C., on brief), for appellants.
 Glen E. Craig, Asst. U.S. Atty. (Vinton D. Lide, U.S. Atty., Columbia, S.C. Heidi Solomon, Asst. U.S. Atty., Charleston, S.C., on brief), for appellee.
 Before WIDENER, MURNAGHAN, and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Appellants Tamara Jo Thigpen and Lisa Marie Kramber brought suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346(b) and 2671-2680, to recover damages for the sexual abuse they encountered as minor patients in the United States Naval Hospital in Beaufort, South Carolina. The district court dismissed these claims for want of jurisdiction under Fed.R.Civ.P. 12(b)(1), because they arose out of an assault and battery and thus fell within the intentional tort exception to the FTCA, 28 U.S.C. Sec. 2680(h). Thigpen v. United States, 618 F.Supp. 239 (D.S.C.1985). Appellants challenge this conclusion here, primarily asserting that no assault and battery occurred because they consented to the sexual advances. The district court rejected this contention, and we affirm its dismissal of this action.
 
 I.
 
 2
 Appellants Thigpen and Kramber each suffered from a ruptured appendix. They shared a room at the Beaufort hospital in March, 1981, when they were admitted as dependents of retired military personnel. Thigpen was fourteen years old and Kramber was twelve. Both were treated by Corpsman Edmundo Rodriguez, who monitored their vital signs after the surgery and who subjected them to the depraved and abusive behavior at issue in this case.
 
 
 3
 According to Kramber's testimony at a subsequent criminal trial, Rodriguez entered her room during the early morning hours of March 18, 1981, stating that he needed to check her vital signs. Kramber was alone, because Thigpen was not yet sharing the room with her. Under the guise of determining Kramber's blood pressure, Rodriguez held her hand against his genitals, telling her to open and close her hand. She refused and grabbed the bed rail. Rodriguez asked to see Kramber's incision, and when she lifted her nightgown, he pulled down her underpants and fondled her genitals. Kramber became frightened, pulled up her underpants and told Rodriguez to stop.
 
 
 4
 Rodriguez returned the next night, after Thigpen had joined Kramber. Thigpen was asleep when Rodriguez entered, but woke to find Rodriguez examining the intravenous needle in her arm. Rodriguez went around the bed and grabbed Thigpen's other arm, forcing her hand to his genital area and asking her to open and close her hand so he could take her blood pressure the "Spanish way." Thigpen realized what was happening and pulled her hand away. Rodriguez proceeded to Kramber's bed and again tried to force her hand to his groin, when another corpsman looked into the room and interrupted the attack.[1]
 
 
 5
 After learning of these incidents, Kramber's mother contacted law enforcement officials, and criminal charges were filed against Rodriguez. He was convicted of one count of contributing to the delinquency of a fourteen-year-old child and two counts of committing a lewd act upon a twelve-year-old child. State v. Rodriguez, 279 S.C. 106, 302 S.E.2d 666 (1983). It was revealed at trial that Rodriguez had pled guilty to a Texas charge of indecency with a child in 1980, before he entered the Navy. Plaintiffs contend that Rodriguez, with the consent of Navy officials, was allowed to enter the Navy rather than serve his 30-day sentence.
 
 
 6
 Thigpen and Kramber filed suits against the United States under the FTCA, asserting negligence on the part of physicians, hospital staff, and supervisory Naval personnel. The district court, relying on United States v. Shearer, --- U.S. ----, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), found that plaintiffs' claims, though sounding in negligence, were barred by Sec. 2680(h) as claims "arising out of assault [or] battery."[2]
 
 II.
 
 7
 The Federal Tort Claims Act, like all waivers of sovereign immunity, must be strictly construed in favor of the sovereign. Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983). Exceptions to such waivers, accordingly, receive a generous construction, with ambiguities resolved against those seeking recovery from the government. Garcia v. United States, 776 F.2d 116, 118 (5th Cir.1985). Only when Congress has clearly and unequivocally expressed its consent to suits against the United States may courts entertain such actions. United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); Radin, 699 F.2d at 684-85. In 28 U.S.C. Sec. 2680(h), Congress excepted from the grant of jurisdiction in 28 U.S.C. Sec. 1346(b) "[a]ny claim arising out of assault [or] battery." Despite plaintiffs' attempts to avoid this exception by bringing actions in negligence, we hold that 28 U.S.C. Sec. 2680(h) erects a bar to all claims which rely on the existence of an assault or battery by a government employee.[3]
 
 
 8
 This interpretation has been the law of this circuit since at least Hughes v. United States, 662 F.2d 219 (4th Cir.1981), aff'g, Hughes v. Sullivan, 514 F.Supp. 667 (E.D.Va.1980). Hughes involved a postal employee, previously convicted on charges of sexual assault, who took indecent sexual liberties with two young girls. Suit was brought charging the government with "negligent retention ... of a dangerous employee." Hughes v. Sullivan, 514 F.Supp. at 668. The district court held that Sec. 2680(h) barred the claim because the employee's assault was an integral part of plaintiffs' action. Id. at 670. This court affirmed the judgment of the district court that the action was barred by 28 U.S.C. Sec. 2680(h). Hughes, 662 F.2d 219. See also, Andrews v. United States, 732 F.2d 366, 371 (4th Cir.1984) (explaining Hughes ). Hughes established that Sec. 2680(h) not only covers actual claims for assault and battery but, as its broad language indicates, also bars any claim that depends on the existence of an assault and battery. Accord, Garcia, 776 F.2d at 118; Doe v. United States, 769 F.2d 174 (4th Cir.1985); Wine v. United States, 705 F.2d 366, 367 (10th Cir.1983); Lambertson v. United States, 528 F.2d 441 (2d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976).
 
 
 9
 Four Justices of the Supreme Court took this same view in Shearer, 105 S.Ct. at 3042-43 (four others voted to rest decision on another ground, and Justice Powell did not participate). The Court there considered the FTCA claim of a plaintiff that the Army's negligence caused her son to be murdered by a fellow serviceman. As in this case, the perpetrator of the crime in Shearer had a prior record which might have caused authorities to consider him dangerous. Yet four Justices found this action barred by Sec. 2680(h). Their opinion first noted that the plain language of the provision "does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery. We read this provision to cover claims ... that sound in negligence but stem from a battery committed by a Government employee." 105 S.Ct. at 3042 (emphasis in original). The opinion found further support in both legislative history and in prior constructions of parallel exceptions to the FTCA. See, e.g., Kosak v. United States, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984); United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Whether or not technically bound by this view, we find its analysis persuasive. Congress intended that "Sec. 2680(h) would bar claims arising out of a certain type of factual situation--deliberate attacks by government employees." Shearer, 105 S.Ct. at 3042.
 
 
 10
 Section 2680(h) thus bars FTCA claims that allege the negligence of supervisors but depend upon the existence of an assault or battery by a government employee. Many assaults can be attributed easily enough to someone's negligence in permitting the attack to take place. To hold such allegations actionable under the FTCA would undermine Congress' clear intent to limit its waiver of immunity in Sec. 2680(h).
 
 
 11
 Our position is not consistent with that of the concurring opinion. We reject its view that Sec. 2680(h) is inapplicable whenever the government can be found to owe plaintiff "an independent affirmative duty." To begin with, this duty is elastic and would stretch to cover most claims against the governmental employees for assault and battery, as the examples in footnote 8 of the concurrence make apparent.
 
 
 12
 Moreover, the statutory derivation of our brother Murnaghan's position remains obscure. Section 2680(h) directs unequivocally that no recovery lies under the FTCA for claims "arising out of assault [or] battery." It draws no distinction for cases involving an "affirmative duty" owed by government to plaintiffs. Here there would be no claim of any sort without the fact of the assault by Corpsman Rodriguez. If the language chosen by Congress is to have meaning, this claim must be one that arises out of an assault and battery and hence is barred by Sec. 2680(h). So long as the factual predicate of the claim is one of assault and battery, adroit pleading of negligence or breach of duty on the part of government supervisors will not suffice to circumvent the statutory mandate.
 
 III.
 
 13
 Appellants apparently recognize the total bar of 28 U.S.C. Sec. 2680(h) in the event of assault or battery, for they focus on the preliminary question of whether there was in fact an assault or battery here.[4] South Carolina defines battery as "the actual infliction of any unlawful, unauthorized violence on the person of another...." Gathers v. Harris Teeter Supermarket, Inc., 282 S.C. 220, 317 S.E.2d 748, 754 (App.1984). An assault occurs "when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." Id., 317 S.E.2d at 754-55. Appellants assert that neither assault nor battery occurred here because they consented to the actions of Corpsman Rodriguez, believing them to be part of their medical care. The district court, however, found that "both girls resisted the advances" of Rodriguez, Thigpen, 618 F.Supp. at 245, and appellants challenge both this conclusion and the procedures used by the district court to reach it. Upon review of the district court's actions, we affirm.
 
 
 14
 Appellants initially contend that the court erred in failing to accept the allegations of consent found in their complaint.[5] A district court, however, is under no duty to accept factual allegations as true for purposes of a motion to dismiss for want of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). In contrast to its treatment of disputed issues of fact when considering a Rule 12(b)(6) motion, a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion. Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); Espinoza v. Missouri Pacific Railroad Co., 754 F.2d 1247, 1248 n. 1 (5th Cir.1985); Asociacion de Reclamantes v. United Mexican States, 735 F.2d 1517, 1519 n. 1 (D.C.Cir.1984), cert. denied, 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985); 2A Moore's Federal Practice, p 12.07 [2.-1], at 12-45, 46 (1985). Were it otherwise, a party could bootstrap jurisdiction simply by the use of artful pleading. The nature of jurisdiction requires that courts establish in fact, rather than assume blindly, their power to hear a dispute. Because the FTCA is jurisdictional in nature, see 28 U.S.C. Sec. 1346(b), the district court was required to consider whether the facts of this case brought it within the statute. Accordingly, the court did not err by determining for itself whether appellants consented to Rodriguez's action or whether there was an assault and battery that defeated jurisdiction under the Federal Tort Claims Act.
 
 
 15
 Nor did the court err by granting the government's motion under Fed.R.Civ.P. 26(c) to stay discovery pending disposition of the 12(b)(1) motion. Appellants assert that discovery on the issue of consent would have revealed the facts necessary to show that no assault or battery occurred. We recognize that a 12(b)(1) motion is a dispositive one and that ordinarily a trial court should allow plaintiffs the opportunity to discover facts to support jurisdictional allegations. See, e.g. Majd-Pour v. Georgiana Community Hospital, Inc., 724 F.2d 901, 903 (11th Cir.1984); 2A Moore's Federal Practice, p 12.07 [2.-1], at 12-50. Trial courts, however, are given wide discretion to control this discovery process, Land v. Dollar, 330 U.S. at 735 n. 4, 67 S.Ct. at 1011 n. 4; Prakash v. American University, 727 F.2d 1174, 1179-80 (D.C.Cir.1984), a discretion that extends to whether to hear oral testimony on the motion itself. Fed.R.Civ.P. 43(e).
 
 
 16
 The facts do not reveal an abuse of that discretion in the limitation of discovery here. Corpsman Rodriguez had been tried and convicted in state court on charges that form the basis for this action. This process produced both affidavits and extensive testimony by appellants as to the events of March, 1981. These statements, made under oath, were certainly credible accounts of the relevant facts, and the district court properly relied upon them. See, Thigpen, 618 F.Supp. at 242-44. We cannot say that it was an abuse of discretion to limit discovery where reliable pre-existing sources made available to the court statements of the parties involved in the actions that generated the lawsuit. On the contrary, this limitation prudentially avoided duplicative proceedings from which the court could realistically expect to gain little but cumulative insight.[6]
 
 
 17
 Finally, appellants challenge the court's conclusion that "both girls resisted the advances" of Rodriguez, id. at 245, asserting instead that they consented to his actions because they believed them to be part of their medical care. They rely on Andrews v. United States, 732 F.2d 366 (4th Cir.1984) where we found 28 U.S.C. Sec. 2680(h) inapplicable because "the plaintiff consented to sexual advances offered as 'treatment,' and hence there was neither assault nor battery." Doe v. United States, 769 F.2d 174, 175 (4th Cir.1985). Andrews involved claims that a physician's assistant employed by the government had sexual intercourse with a patient. The district court concluded that the patient, suffering from severe depression, "was convinced by [the physician's assistant] that the best course of treatment for her was to engage in sexual intercourse with him." Andrews v. United States, 548 F.Supp. 603, 609 (D.S.C.1982). The patient's consent was obtained over the course of a five month relationship. Here, by contrast, the district court found that "both girls resisted the advances of a corpsman who entered their room for a few minutes, returned the next night, and then was gone forever." Thigpen, 618 F.Supp. at 245.
 
 
 18
 We must affirm unless we can conclude that this factual finding was clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). See also 2A Moore's Federal Practice, p 12.07 [2.-1] at 1249 (appellate review of factual disputes concerning jurisdiction is on a clearly erroneous basis). Our review of the evidence does not leave us with a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In fact, we think the affidavits and testimony of appellants establish conclusively that they resisted and feared the advances of Rodriguez. Kramber, for example, testified that Rodriguez "was pushing my arm and told me to open and close my hand and I wouldn't do it so I grabbed the side of the bed on the bar and he was trying to pull my hand off and I wouldn't let him." Thigpen explained that Rodriguez "was feeling my arm, and then he started moving it toward him ... forcing me until I [touched] his private parts and he told me to open and close my hand. I opened it and I just kinda realized what he was doing and then I pulled away." In their complaints, moreover, each appellant alleges that Rodriguez molested her "by fondling her and forcing her to touch and fondle his genitals" (emphasis added). These accounts, and other evidence before the district court, establish clearly that the events here were unlike the consensual relationship found in Andrews to remove the case from 28 U.S.C. Sec. 2680(h). To find consent to these advances would be to indulge a legal fiction, one that would detract from the dignity of those who obviously wanted no part of such offensive overtures.
 
 
 19
 To find a fictional consent would also undermine the intent of Congress in Sec. 2680(h) throughout the field of health care. Congress in 1974 amended that section to make actionable the intentional torts of law enforcement officers. See 28 U.S.C. Sec. 2680(h) (West's Supp.1985). It has not made actionable such claims against physicians and medical personnel. Unless and until it does so, we shall interpret the statute as Congress wrote it.
 
 IV.
 
 20
 There are many times when a court lacks the luxury of consulting its preferences and must value foremost its role as a servant of higher authority and law. This is one of those times. We deeply regret the trauma and indignity suffered by appellants, but we find ourselves bound by the principles of sovereign immunity, the broad language of Congress in the FTCA, and the weight of Supreme Court and circuit precedent. Accordingly, the judgment of the district court is hereby
 
 
 21
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, concurring:
 
 22
 The majority holds that the present action is barred by 28 U.S.C. Sec. 2680(h), which contains an exception, applicable to claims "arising out of assault [and] battery," to the Federal Tort Claims Act's general waiver of sovereign immunity. I disagree with that conclusion. Although I do not quarrel with the majority in its finding that Rodriguez' conduct constituted assault and battery on the plaintiffs, my view is that the plaintiffs' claims did not "arise out of" Rodriguez' assaults and batteries, but rather are traceable to violation of an independent affirmative duty owed to them by the Navy hospital. I, in the end, nevertheless concur in the majority's judgment that the action is barred by sovereign immunity, because I believe that the case falls within the doctrine enunciated in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and further elucidated in United States v. Shearer, --- U.S. ----, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).
 
 I.
 
 23
 It is well settled that the United States, as sovereign, is absolutely immune from suit in the absence of an express statutory waiver of immunity. United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983). With the Federal Tort Claims Act, Congress expressly waived sovereign immunity with respect to claims against the United States for injury to person or property under circumstances where the United States, if a private party, would be liable under local tort law. 28 U.S.C. Sec. 1346(b). That waiver of immunity was qualified, however, by an exception providing that the waiver would not apply to claims "arising out of assault [and] battery." 28 U.S.C. Sec. 2680(h).
 
 
 24
 In my view, the category of claims "arising out of" assault and battery is properly limited to those where the liability of the United States would effectively be based on vicarious responsibility, through the doctrine of respondeat superior, for the violent act of another. A claim does not "arise out of" an assault and battery where it is based directly on the breach of a clear and recognizable affirmative duty, owed by the United States to the plaintiff, to protect the plaintiff from the harmful conduct of others.
 
 
 25
 The distinction drawn here may appear subtle at first consideration, but it is, nevertheless, quite real. In the absence of a special affirmative duty of protection owed by the United States to the plaintiff, the plaintiff has no claim against the United States directly. The law does not impose a general affirmative duty, applicable to all members of the public, to act to protect a person in peril from the intentional harmful conduct of another. Prosser and Keeton on Torts, Sec. 56 at 373-85 (5th ed. 1984) (collecting cases). Allegations of "negligent supervision" on the part of government officials are also insufficient, because the United States owes no general duty to the public to supervise its employees or agents with care.
 
 
 26
 On the other hand, the United States may assume an affirmative duty to protect a plaintiff from the violent conduct of others by entering into a special relationship with that plaintiff. Such affirmative duties arising out of special relationships between plaintiff and defendant are recognized in most jurisdictions. See Prosser and Keeton, supra; Restatement Second of Torts, Secs. 315, 320.[7] Special relationships giving rise to an affirmative duty to prevent the harmful conduct of others include the relationship between a hospital or medical center and its patients. Johnson v. Misericordia Community Hospital, 90 Wis.2d 708, 301 N.W.2d 156 (1981); Bezark v. Kostner Manor, Inc., 29 Ill.App.2d 106, 172 N.E.2d 424 (1961); Sylvester v. Northwestern Hospital of Minneapolis, 236 Minn. 384, 53 N.W.2d 17 (1952).[8] In such a situation, the legal obligation of the hospital is based on grounds quite independent of those making liable the person who actually commits the harmful attack.[9] Consequently, a claim based on the hospital's breach of its affirmative duty should not be viewed as "arising out of" a related assault and battery.[10] The assault and battery may insulate the United States from vicarious liability for the hospital corpsman's acts. It does not immunize the government from liability for the Navy hospital's tortious inattention to its responsibilities to protect its patients.
 
 
 27
 Such a view is by no means foreclosed by the Supreme Court's opinion in United States v. Shearer, --- U.S. ----, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). In Shearer, an Army serviceman was kidnapped and murdered by another serviceman. The victim's mother sued the United States under the Federal Tort Claims Act, claiming that the Army had acted negligently in supervising the murderer. Eight of the Justices participated in the decision.[11] While all agreed that the doctrine of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) barred recovery, only four of the eight Justices agreed with the alternative proposition that Sec. 2680(h) operated to bar all claims stemming in any fashion from a factual situation involving assault or battery. An equal number of Justices explicitly refrained from announcing a principle related to actions arising out of assault or battery which might prove an unnecessary source of trouble at some future date. Consequently, the discussion of Sec. 2680(h) was nothing more than a dictum supported by only four members of the Court.[12] While even a dictum from four Justices merits serious and respectful attention, the weight to be attributed to such a dictum is lessened where four different members of the Court appear to hold a contrary view.
 
 
 28
 Moreover, I do not believe that the previous decisions of this circuit compel the conclusion that Sec. 2680(h) operates to bar claims based on the United States' breach of an affirmative duty to protect the plaintiff from the conduct of others. The decision in Hughes v. United States, 662 F.2d 219 (4th Cir.1981), heavily relied on by the majority, is readily distinguishable. There, the government had never voluntarily entered into a special relationship of trust and protection with the plaintiffs. Consequently, the government owed them no duty to take affirmative action to protect them from the harmful conduct of others. Because no claim of an independent, affirmative duty could be made out against the United States, the only possible basis for a judgment against the government would have been vicarious liability for the acts of a deviant postal employee. This court properly concluded that such a claim was barred by Sec. 2680(h). Hughes, then, is perfectly consistent with an interpretation of Sec. 2680(h) that would allow actions based on distinct claims of breach of an affirmative duty to protect, separate from the assault and battery itself.
 
 
 29
 Other decisions of this circuit provide more direct support for the position I take. In Rogers v. United States, 397 F.2d 12 (4th Cir.1968), the court held that Sec. 2680(h) posed no obstacle to an action for negligent failure to prevent an assault and battery carried out by another where the government had voluntarily assumed an affirmative duty to protect the plaintiff, a probationer in the custody of a United States Marshal. Section 2680(h) was inapplicable, we explained, because "[i]f there is a valid claim here, it is founded on negligence even though assault or false imprisonment may be collaterally involved." Id. at 15. Similarly, in Andrews v. United States, 732 F.2d 366 (4th Cir.1984), a case somewhat closer to the present one on its facts, we found a waiver of sovereign immunity where Navy physicians had failed to carry out their affirmative duty to protect a patient from harm at the hands of a physician's assistant.[13]
 
 
 30
 Decisions from other circuits also lend support to the view that Sec. 2680(h) does not bar an action based on an affirmative duty owed by the United States. In Gibson v. United States, 457 F.2d 1391 (3d Cir.1972), for example, the Third Circuit found no sovereign immunity bar to a claim against the United States brought by an instructor in a federal Jobs Corps program for the mentally ill who had been attacked by an enrollee in the program. In ordinary circumstances, the court pointed out, the United States is under no duty to act for the protection of others. However, where the United States had voluntarily undertaken a program of instruction and rehabilitation of mentally disturbed trainees, it had assumed an affirmative duty to protect program instructors from harm at the trainees' hands. A breach of that affirmative duty could form a basis for the instructor's claim independent of the assault and battery itself. Id. at 1394-95. In Jablonski v. United States, 712 F.2d 391 (9th Cir.1983), the Ninth Circuit held that the daughter of a murder victim could maintain an action against the United States for its failure to warn her mother of her danger, where the killer had been a psychiatric outpatient at a Veterans Administration hospital and government psychiatrists had assumed responsibility for his care. Similarly, in Hicks v. United States, 511 F.2d 407 (D.C.Cir.1975), the District of Columbia Circuit found no bar to a claim against the United States based on the negligent decision of a government hospital to release a dangerous mental patient who subsequently shot and killed his wife.[14]
 
 
 31
 Applying those principles to the present case, I conclude that the plaintiffs' claims are not barred by Sec. 2680(h). The plaintiffs have sufficiently shown that the United States, through its agents, voluntarily entered into a special, protective relationship with Thigpen and Kramber when they were admitted to the Beaufort naval hospital.[15] That relationship involved the assumption by the United States of an affirmative duty to protect them against the harmful conduct of others. Hospital patients stand in particular need of protection from the institution responsible for their care. Weakened by disease or by the after-effects of surgery, they are peculiarly unable to protect themselves. They are also psychologically unprepared to meet a physical attack, especially one coming from a member of the medical staff. Relying on the belief that hospital personnel are concerned solely with their welfare, patients view staff members with trust and obediently submit to their authority. As patients, then, Kramber and Thigpen were entitled to expect the government hospital to protect them from harm at the hands of a medical corpsman, who was authorized by the Navy to enter their hospital room and to come into physical contact with them. Because their claims are based on an alleged violation of that duty, they do not "arise out of" assault and battery and are not within the ambit of Sec. 2680(h).
 
 
 32
 It is noteworthy, moreover, that the record indicates that Kramber and Thigpen might well be able to prove that the United States violated its affirmative duty to them. It would, of course, be premature to decide the merits of that question at the present stage, when only jurisdiction is at issue. Indications of the strength of the plaintiffs' case are relevant, however, to show that their affirmative-duty claims are not merely a pretext to circumvent Sec. 2680(h), but possess a substance of their own. Typically, a plaintiff alleging a violation of an affirmative duty of protection must show, in addition to the existence of a special relationship giving rise to the duty, that the defendant knew or should have known of the danger threatened by the assailant; that the plaintiff was a foreseeable victim of attack; that the defendant did not take the necessary steps to prevent harm to the plaintiff; and that the defendant's negligence was a proximate cause of the plaintiff's injury. Jablonski v. United States, 712 F.2d 391, 397 (9th Cir.1983); see also Hicks v. United States, 511 F.2d 407, 417-22 (D.C.Cir.1975).
 
 
 33
 The record here suggests that the Navy was actually aware of Rodriguez' abusive tendencies long before the events involving Kramber and Thigpen. Prior to his enlistment in the Navy, Rodriguez had been prosecuted in Texas for his sexual abuse of a ten-year-old girl. He pled guilty to the Texas crime of indecency with a child, and was sentenced to thirty days of incarceration and indefinite probation with psychiatric counseling. Nevertheless, Rodriguez was allowed to enlist in the Navy instead of serving his sentence, and he was subsequently assigned to the Beaufort hospital. It seems entirely possible, even probable, then, that the plaintiffs could show that Rodriguez' superiors knew or should have known of his aberrant proclivities. At least they should have had the opportunity to explore the matter by discovery. The plaintiffs would probably also be able to show that Rodriguez' superiors could and should have foreseen that, as preadolescent girls, they were likely victims of Rodriguez' abuse. In those circumstances, the hospital's failure to take steps to remove Rodriguez from the plaintiffs' care would have amounted to a negligent breach of its duty.[16] Plainly, the plaintiffs' suit may not be regarded as merely an effort to contrive a claim in order to avoid the bar of Sec. 2680(h).
 
 II.
 
 34
 Despite my expression of dissatisfaction with the rationale employed by the majority for reaching the result, I nevertheless concur, because I believe that the plaintiffs' actions are barred by sovereign immunity for an entirely different reason. In a series of cases, the Supreme Court has indicated that the United States will not be found to have waived sovereign immunity with respect to claims that "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness" by challenging a military "decision of command." United States v. Shearer, --- U.S. ----, 105 S.Ct. 3039, 3044, 87 L.Ed.2d 38 (1985); see also Chappell v. Wallace, 462 U.S. 296, 298-304, 103 S.Ct. 2362, 2364-2368, 76 L.Ed.2d 586 (1983); Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977).
 
 
 35
 The scope of that doctrine, which originated in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), has expanded as its rationale has evolved. In Feres, the Court decided only that the waiver of sovereign immunity inherent in the Federal Tort Claims Act did not extend to the claims of servicemen for injury due to the acts of their superior officers. In reaching that conclusion, the Court relied primarily on two factors. Because the relationship between the United States and members of its armed forces is "distinctively federal in character," the Court concluded that the government's tort liability to servicemen should not be determined by local law. 340 U.S. at 143, 71 S.Ct. at 158. In addition, the enactment of federal statutes establishing a comprehensive compensation scheme for members of the armed services suggested to the Court that Congress had not intended to permit servicemen to pursue a tort remedy against the United States. Id. at 144, 71 S.Ct. at 158.
 
 
 36
 The Court expanded the rationale underlying Feres in United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In that case, the Court emphasized that the Feres rule against suits brought by servicemen was based on "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty ..." Id. at 112, 75 S.Ct. at 143. With Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), which applied the sovereign immunity bar to a claim for indemnity by the manufacturer of malfunctioning military equipment, the Court again shifted its focus, pointing not only to a potential negative effect on the relationship between an individual serviceman and his superiors, but also to the more pervasive undermining of military authority that could stem from judicial "second-guessing" of military orders. Id. at 673, 97 S.Ct. at 2058. In Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), where the Court held that an analogous immunity barred Bivens-type actions[17] against military officers, the Court continued to emphasize its reluctance to subject military command decisions to judicial review. Id. at 301-02, 103 S.Ct. at 2366-67.
 
 
 37
 The discussion of the Feres doctrine in United States v. Shearer, --- U.S. ----, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), which was joined by all eight Justices participating in the decision, indicates that the doctrine no longer rests primarily on the interest in maintaining the relationship of authority between an individual member of the military and his superiors, but rather on a concern that the courts should not interfere with "the 'management' of the military," or "call[ ] into question basic choices about the discipline, supervision, and control of a serviceman." Id. 105 S.Ct. at 3043. Courts should be hesitant to entertain suits that would require commanding officers "to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions" which should properly be left to the officers' professional judgment. Id. at 3044. After Shearer, then, the Feres doctrine must mean that no waiver of sovereign immunity may be found with respect to any claim, whether brought by a serviceman or by a civilian, that challenges a military "decision of command" relating to the effective management of military personnel and resources.
 
 
 38
 Most disputed matters in the law fall along a spectrum and, in fashioning a rule or principle applicable to a particular case, one must exercise care to appreciate just where along the spectrum the case falls. Certainly, some decisions made by military officers will be far enough removed from the core of military operations that their questioning in judicial proceedings could not be said to threaten military effectiveness. The recruitment and assignment of servicemen, however, clearly fall within the insulated category of decisions. A military officer must be free to make choices concerning the most effective deployment of the servicemen under his command without second-guessing by the judiciary. Consequently, while the decision to assign Rodriguez to his position at the Beaufort naval hospital without taking precautions for the safety of young female patients was certainly ill-considered, it cannot afford a basis for a Federal Tort Claims Act suit. Accordingly, I concur in the decision of the majority, but solely on the ground that the present case is within the scope of the Feres doctrine as that doctrine has been developed in United States v. Shearer.
 
 
 
 [1]
 Kramber does not assert the facts of this second encounter as part of her complaint in this case
 
 
 [2]
 The district court also concluded that plaintiffs were barred by the "scope of employment" requirement in 28 U.S.C. Sec. 1346(b). Thigpen, 618 F.Supp. at 245. Because we agree that the actions are barred by the assault and battery exception, we do not reach the alternative ground for dismissal
 
 
 [3]
 We note that a different rule may obtain where the alleged assailant is not an employee of the government. See Rogers v. United States, 397 F.2d 12 (4th Cir.1968); Panella v. United States, 216 F.2d 622 (2d Cir.1954). The distinction was examined in Hughes v. Sullivan, 514 F.Supp. 667 (E.D.Va.1980) aff'd sub nom. Hughes v. United States, 662 F.2d 219 (4th Cir.1981)
 
 
 [4]
 In their reply brief, appellants note that Shearer "simply re-affirms what this Court had already held in Hughes." Those cases, however, are said to differ from the instant case because they "obviously arose out of assaults and batteries."
 
 
 [5]
 The concept of consent, as detailed in Restatement (Second) of Torts Secs. 892-892D, is one of legally effective assent. Appellants' allegation of consent, however, necessarily included factual allegations about their behavior. We accordingly treat the allegation of consent as factual. The district court, moreover, disposed of the claim on a factual finding--that appellants resisted--and therefore did not consider the legal issues of whether any assent given was effective
 
 
 [6]
 The district court in fact weighed an additional affidavit submitted by appellant Kramber that had been prepared for this litigation. See, Thigpen, 618 F.Supp. at 243
 
 
 [7]
 A defendant may also assume an affirmative duty to protect the plaintiff by entering into a special relationship with the plaintiff's assailant. For example, where the assailant is a violent patient in the custody or care of hospital psychiatric staff, the hospital is held to assume an affirmative duty to protect any person who might foreseeably become a victim of the patient's attacks. Lipari v. Sears, Roebuck & Co., 497 F.Supp. 185 (D.Neb.1980); Bradley Center, Inc. v. Wessner, 250 Ga. 199, 296 S.E.2d 693 (1982); McIntosh v. Milano, 168 N.J.Super. 466, 403 A.2d 500 (L.Div.1979); Tarasoff v. Regents of University of California, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). Where the hospital or medical center is operated by the federal government, that duty of protection is assumed by the United States. Jablonski v. United States, 712 F.2d 391, 397-98 (9th Cir.1983); Hicks v. United States, 511 F.2d 407, 415-22 (D.C.Cir.1975). See generally Prosser and Keeton on Torts, Sec. 56 at 383-84 (5th ed. 1984)
 
 
 [8]
 Other such relationships may include those between innkeepers and guests, landlords and tenants, jailers and prisoners, schools and pupils, and, in certain cases, employers and employees, and business establishments and their customers. See Prosser and Keeton, supra, at 383 (collecting cases)
 
 
 [9]
 Of course, the law that would be applicable here is that of South Carolina. No South Carolina case appears to have addressed the question of a hospital's duty to protect its patients. It is noteworthy, however, that the South Carolina Supreme Court has held that a storeowner is under an affirmative duty to protect its customers from the acts of third parties where the storeowner knows or has reason to know of the danger. Shipes v. Piggly Wiggly St. Andrews, Inc., 269 S.C. 479, 238 S.E.2d 167 (1977). That holding suggests that the South Carolina courts would be likely to recognize a similar affirmative duty in the even closer and more protective relationship between a hospital and its patient. The exact scope of the South Carolina duty is a matter to be inquired into in the adjudication of the merits of the plaintiffs' action. For the purposes of determining whether sovereign immunity applies, however, it should be sufficient that the plaintiffs have presented a colorable claim
 
 
 [10]
 Indeed, an actual assault or battery is not necessary to a violation of the hospital's duty. A defendant violates its affirmative duty to protect when it allows the creation of a foreseeable risk that a third party may harm the plaintiff, without either warning the plaintiff of that risk so that the plaintiff may take steps to avoid the danger, or, where the plaintiff is incapable of taking such steps, taking action to control the third party's conduct. E.g., Jablonski v. United States, 712 F.2d 391, 397 (9th Cir.1983). The occurrence of the actual assault and battery thus serves only to establish the extent of the plaintiff's injury, not to establish the hospital's breach of duty
 
 
 [11]
 Justice Powell did not participate
 
 
 [12]
 The four Justices who deemed the "arising out of assault [or] battery" exclusion applicable may not even be described as a plurality, because the Court was evenly divided on an issue which was unnecessary to its decision. A "plurality" commonly means a position held by more of the court members than those adopting any other position which combines with different views arriving at the same ultimate result to afford a majority necessary to a holding. In the instant case, the majority necessary to decision reached agreement on a totally alternative basis for the result--the Feres doctrine
 
 
 [13]
 It was also held, in Andrews, that the physician's assistant's conduct did not amount to an assault or battery. The assistant had deluded the patient into believing, over a long period of time, that a sexual relationship with him would be a helpful course of treatment for her depression. Such conduct amounted to medical malpractice, not assault and battery. Id. at 371. While that ruling alone was enough to support the conclusion that Sec. 2680(h) did not operate to bar the action, the opinion also made the point that the claim against the government was based not on vicarious liability for the assistant's acts, but on the supervising physicians' breach of their independent duty. Id. at 370
 
 
 [14]
 It has been suggested that such cases may be distinguished on the ground that the assailant responsible for the actual assault and battery was not a government employee. Johnson by Johnson v. United States, 788 F.2d 845, 850-52 (2d Cir.1986); Garcia v. United States, 776 F.2d 116, 117-18 (5th Cir.1985); Naisbitt v. United States, 611 F.2d 1350, 1352-56 (10th Cir.1980). The difficulty with such a distinction, however, is that the words "arising out of assault [and] battery" in Sec. 2680(h) must mean the same thing whether the assailant is a government employee or not. If any claim related to a factual situation involving assault and battery, regardless of its legal theory, may be said to "arise out of" the assault and battery, the claim must be barred by Sec. 2680(h) regardless of whether the assailant was or was not on the United States payroll. Conversely, if a claim "arises out of" an assault and battery only where it is based on the assailant's tort and not on the government's breach of an independent affirmative duty, then Sec. 2680 poses no obstacle to an affirmative-duty claim, distinct from the assault and battery tort itself, regardless of the employment status of the assailant
 
 
 [15]
 The application of Sec. 2680(h) is, like all questions involving sovereign immunity, a jurisdictional issue. A challenge to the court's jurisdiction under Fed.R.Civ.P. 12(b)(1) may be raised in either of two ways. The defendant may argue that the allegations of the complaint are facially insufficient to sustain the court's jurisdiction. Confronted with a motion of that kind, the court must proceed as it would on a motion to dismiss for failure to state a claim under Rule 12(b)(6). The allegations in the complaint are taken as true, and materials outside the pleadings are not considered. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982); Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir.1981). Alternatively, the defendant may contend that the plaintiff's jurisdictional allegations, though facially adequate, are factually untrue. Such a motion requires the court to consider evidence outside the pleadings to determine whether the facts support the jurisdictional allegations. Adams v. Bain, 697 F.2d at 1219; Mortensen v. First Federal Savings & Loan Ass'n, 549 F.2d 884, 890-91 (3d Cir.1977). Depending upon the kind of Rule 12(b)(1) motion, then, either an allegation or a showing that the United States voluntarily assumed a protective duty towards the plaintiff should be sufficient to take a case outside the scope of Sec. 2680(h) and thus defeat jurisdictional attack. Here, because the government has made a factual challenge to the court's jurisdiction, the plaintiffs were obliged to make an evidentiary showing concerning the relationship between them and the Navy hospital
 
 
 [16]
 The hospital's breach of duty would thus have occurred when Rodriguez first crossed the portal of the plaintiffs' hospital room, regardless of whether the patent threat which existed did in fact materialize
 
 
 [17]
 In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court held that the Constitution itself provides a cause of action for persons whose constitutional rights have been violated by federal officials