**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-2034**

---

DEBORAH NEWSOM,

                                        Plaintiff - Appellant,

            versus

JO ANNE BARNHART, Commissioner, Social
Security Administration,

                                        Defendant - Appellee.

---

Appeal from the United States District Court for the Eastern
District of North Carolina, at Greenville.  Malcolm J. Howard,
District Judge. (CA-02-680-H)

---

Argued:  September 29, 2004          Decided:  November 18, 2004

---

Before WILKINSON and LUTTIG, Circuit Judges, and Henry E. HUDSON,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** David Garrett Schiller, SCHILLER & SCHILLER, P.L.L.C.,
Raleigh, North Carolina, for Appellant.  Paul Martin Newby,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Marvin
Schiller, SCHILLER & SCHILLER, P.L.L.C., Raleigh, North Carolina,
for Appellant.  Frank D. Whitney, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Plaintiff-appellant Deborah Newsom, an employee of the Social Security Administration ("SSA"), filed an internal complaint with the SSA for sex discrimination against Jo Anne B. Barnhart, in her official capacity as Commissioner of the SSA. Newsom claimed that she was denied a promotion because of her sex, in violation of Title VII. After Newsom was denied relief in the administrative proceeding, she filed a complaint in the district court and requested further discovery beyond the administrative record. The district court denied Newsom's discovery request and granted the defendant's motion for summary judgment. Newsom appeals.

I.

Appellant is an attorney employed by the SSA as a Supervisory Attorney Advisor, a GS-13 position. J.A. 138. Her duties include supervising 15 attorneys and several clerks and performing general legal work such as researching and drafting memoranda. Id.

In April 1999, the position of Branch Chief of Programs ("BCP") became available in the Atlanta, Georgia, Regional Office for the Office of Hearings and Appeals of the SSA. Id. Although the BCP in Atlanta at the time was a female attorney, Susan Dodd, other regions have employed non-attorney BCPs. J.A. Ex. 113, 962-65. Pursuant to the instructions of Regional Chief Administrative Law Judge Henry Watkins, who had responsibility for the hiring

decision, the Atlanta BCP position was opened to both attorneys and paralegals through separate job descriptions. J.A. 138-39. Both descriptions listed similar basic skills as requirements, except that the attorney position required the applicant to be a licensed attorney with legal experience. J.A. 139 n.1. The human resources department created a Best Qualified List for each position: the paralegal list included five women as well as Leon Belt, a male who ultimately received the position, and the attorney list included three men and four women, including Newsom. J.A. 139. Each of the candidates on the Best Qualified Lists was interviewed by an ALJ, Ollie Lorance Garmon, and the management officer, Gloria Bozeman. Id. Judge Watkins made the final decision to hire Belt based on Garmon's and Bozeman's notes from the interviews, the candidate's applications, and his personal knowledge of the candidates. Id.; J.A. Ex. 1018.

When she did not receive the job, Newsom filed an internal complaint for sex discrimination. J.A. 140. During her administrative proceeding, she was permitted discovery of the employee applications, the position descriptions, and the interview questions used by Garmon and Bozeman. Id. She was not given Garmon's and Bozeman's interview notes because they were destroyed after the position was filled. J.A. 140-41.

During a two-day administrative hearing, Dodd testified that a law degree was not necessarily relevant to the position, J.A. Ex.

-4-

471, and Judge Watkins testified that he selected Belt because Belt was the most qualified candidate. J.A. Ex. 635. The SSA dismissed ultimately the complaint.

Newsom subsequently filed a complaint in the district court against Jo Anne B. Barnhart in her official capacity as Commissioner of Social Security, and requested further discovery, which the district denied as duplicative or irrelevant. J.A. 146-48. Thereafter, the district court granted summary judgment in favor of the defendant.

II.

The district court rested disposition on the administrative record, denying appellant's requests for further discovery. J.A. 146-48. Appellant sought discovery of Belt's personnel file, her own personnel file, all documents used in selecting Belt, all performance reviews from the Atlanta and Raleigh offices, and all documents relating to allegations of gender discrimination against Judge Watkins. J.A. 141. She also sought depositions of Belt, the human resources employee in charge of personnel files, the human resources employee in charge of screening federal employees for hire, Judge Watkins, Garmon, and Bozeman.[1] Id. We have recognized that "a district court has wide latitude in controlling discovery

---

[1] Watkins, Garmon, and Bozeman had testified at the administrative hearing.

-5-

and that its rulings will not be overturned absent a showing of clear abuse of discretion."  Ardrey v. UPS, 798 F.2d 679, 682 (4th Cir. 1986).

Appellant claims that the district court's denial of discovery in the instant case was foreclosed by Chandler v. Roudebush, 425 U.S. 840 (1976), in which the Supreme Court held that "federal employees are entitled to a trial de novo of their employment discrimination claims," id. at 846, instead of a "review of the administrative record," id. at 843.

The district court did not err under Chandler in denying the requested discovery.  The Court in Chandler held that a district court may not rest the disposition of a Title VII claim on deference to prior administrative proceedings.  See Chandler, 425 U.S. at 852.  Here, the district court did not defer to the decision reached in the administrative proceeding; rather, it merely held that further discovery would either be irrelevant to the issue of pretext or duplicative of the administrative record. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" (emphasis added)); Thigpen v. United States, 800 F.2d 393, 397 (4th Cir. 1986) ("We cannot say that it was an abuse of discretion to limit discovery where reliable pre-existing sources made available to the court statements of the parties involved in the actions that generated

the lawsuit.  On the contrary, this limitation prudentially avoided duplicative proceedings from which the court could realistically expect to gain little but cumulative insight.").  Given the breadth of the administrative record, we cannot find an abuse of discretion in the district court's refusal to permit further discovery.

III.

Newsom contends that the district court erred in granting summary judgment in favor of the defendant.  We review the district court's grant of summary judgment de novo.  Wachovia Bank, N.A. v. Federal Reserve Bank of Richmond, 338 F.3d 318, 320 (4th Cir. 2003).  Summary judgment is appropriate if the court concludes that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (quoting Fed. Rule Civ. Proc. 56(c)).

Defendant concedes that Newsom established a prima facie case of sex discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The defendant therefore was required to articulate a legitimate, non-discriminatory reason for the decision to hire Belt instead of Newsom.  See id. at 802.  The BCP works directly for Judge Watkins.  J.A. Ex. 197-98 ("Acts as liaison between the RCALJ" and various offices and "recommends appropriate action by the [RCALJ]").  Judge Watkins testified that what he

-7-

wanted in the position was "the best manager and supervisor, not the best lawyer." J.A. Ex. 636. Judge Watkins also testified that Belt performed exemplary work, and had "interpersonal traits . . . a lot better than mine [Judge Watkins'] or most other of our supervisors." J.A. Ex. 635. Based on Belt's experience managing a title company and on Judge Watkins' personal observations of Belt's work, Judge Watkins also concluded that Belt had the superior management skills Judge Watkins desired. J.A. Ex. 1190. On these grounds, Judge Watkins concluded that Belt was the best suited to the position. J.A. Ex. 635.

After the defendant offered a legitimate, non-discriminatory explanation for the decision to hire Belt over Newsom, the burden shifted to the plaintiff to prove that those reasons were pretextual. EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852 (4th Cir. 2001). In order to avoid summary judgment, Newsom had to produce evidence sufficient for a rational factfinder to conclude that the legitimate reason offered for the hiring decision was pretext and the real reason was discrimination. See id. at 854.

The appellant advances several arguments in support of her claim that she established a genuine issue of fact as to whether the employer's non-discriminatory explanation for hiring Belt was pretextual.

First, she contends that the defendant offered contradictory or unsupported explanations regarding the hiring decision. She

-8-

argues that Watkins implied that Garmon and Bozeman had a role in recommending a candidate, J.A. Ex. 1399, but that Garmon and Bozeman asserted in affidavits that they were not involved in the selection process. J.A. Ex. 1376, 1394. But Judge Watkins has never denied that he had full responsibility for the final decision; in the same interview in which Judge Watkins described his reliance on Garmon's and Bozeman's interview notes, he also attributed the final decision to himself. J.A. Ex. 1399 ("Judge Watkins stated he had the option of selecting an individual from one of two different best qualified lists and that it was his belief that Leon Belt was the best qualified individual for the job." (emphasis added)). Thus, there was no inconsistency in Watkins' statements. Even if there were inconsistency, there would be no reason to believe that such inconsistency reflects discriminatory intent.

Newsom also asserts that because Belt did not hold a managerial position within the SSA before his selection as BCP, J.A. Ex. 1372-73, Watkins could not reasonably have believed that Belt's managerial skills were superior to Newsom's. But Watkins did know of Belt's experience managing a title agency and, more importantly, he had personally observed Belt and concluded that his strong interpersonal skills qualified Belt for the management position. J.A. Ex. 635-37. The importance of managerial skills to the BCP position and Watkins' conclusion that Belt was best suited

to provide that leadership undermine Newsom's repeated assertions that she is objectively more qualified, apparently solely because she is a lawyer.[2]  Therefore, Newsom's claims that Watkins' non-discriminatory justifications for hiring Belt were contradictory or unsupported by the evidence are unconvincing, and fall short of establishing a genuine issue of fact on the issue of pretext.[3]

Appellant next claims that the creation of a position description that permitted a paralegal to apply for the position revealed bias by Watkins, because it was crafted to match Belt's qualifications.  But Newsom's authority for this point, which considers an employer's decision to alter job classifications in order to exclude female applicants evidence of discriminatory intent, is inapposite.  See, e.g., Edwards v. Occidental Chem.

---

[2] Appellant also implies that the fact that Belt was disbarred for fraud in the 1970s makes him less qualified than Newsom for the BCP position, which includes inquiries into allegations of fraud. Reply Brief at 8.  However, Judge Watkins denied having any knowledge that Belt had been disbarred when the decision was made. J.A. Ex. 605, 612-14.

[3] Appellant also points to concededly inaccurate testimony by Watkins that the position description was preexisting, when the document describing the paralegal position actually was created after Dodd's departure in connection with the efforts to fill the vacancy. J.A. Ex. 1024.  Under Reeves v. Sanderson, 530 U.S. 133, 148 (2000), the trier of fact may conclude that the employer unlawfully discriminated if the plaintiff's prima facie case is "combined with sufficient evidence to find that the employer's asserted justification is false."  But Watkins has never denied that he decided to open up the BCP vacancy to paralegals, J.A. Ex. 1355-56, and the district court made a finding that Watkins in fact made the decision.  J.A. 138.  Thus, his inability to describe the origins of a particular document does not cast doubt on his stated reasons for hiring Belt.

Corp., 892 F.2d 1442, 1447-48 (9th Cir. 1990) ("[J]ob classification was modified to include five new job qualifications which she did not have."). Here, the job classifications were not modified to exclude female applicants; in contrast, as the district court concluded, "by opening the position to paralegals, the number of overall female applicants increased." J.A. 149. And, in fact, Watkins did not need to create a new position description to bypass Newsom in favor of male applicants; he "passed over three male attorney applicants to choose Mr. Belt." Id. As the district court noted, this evidence may point to a preference by Judge Watkins for Belt, but it does not point to any discrimination on the basis of gender. Id.

Appellant next asserts that a memorandum that Watkins received from a reviewer after the hiring decision was made, which summarized an earlier performance review of Newsom, was adopted by Watkins as a "post-hoc rationale" for the hiring decision. A "post-hoc rationale" for a hiring decision is insufficient. See Sears & Roebuck Co., 243 F.3d at 853 (contrasting a "post-hoc rationale" with a "legitimate explanation"). The memorandum, received in September 2001, described Newsom as displaying interpersonal problems and a failure to delegate, and noted that she had been "advised to adopt a more flexible attitude." J.A. Ex. 1382-83. Newsom suggests that Judge Watkins may have relied on this memo in his affidavit in September 2001 where he stated that

-11-

"Newsom was, at times, inflexible." J.A. Ex. 1379. But even if Watkins did rely on the memorandum for his phrasing, his reason for the hiring decision -- that Belt was the best suited for a position requiring management and interpersonal skills -- was not created post hoc, but has been consistent throughout. See, e.g., J.A. Ex. 638 ("Leon has . . . impeccable interpersonal skills. That's an area in which Miss Newsom is challenged."). The memo merely provides independent support for the reasonableness of his decision, based on other sources. This is not the type of rationale that this court has labeled "post hoc." Cf. Sears & Roebuck Co., 243 F.3d at 853 (post-hoc rationale where defendant told plaintiff that he was not hired because "no hours were available" but later admitted that this was "not accurate" because the decision not to hire was dictated by senior management). Neither the existence of the memo nor possible reliance on it creates a genuine issue as to pretext.

Finally, appellant urges this court to draw an adverse inference from the failure of Garmon and Bozeman to produce their notes from the interviews of candidates for the BCP position. The SSA contends that such notes are "routinely destroyed" upon the completion of the hiring/promotion process. J.A. Ex. 1191, 626-27. Appellant contends that such destruction runs counter to 5 C.F.R. § 335.103(b)(5), which provides that "[e]ach agency must maintain a temporary record of each promotion sufficient to allow

-12-

reconstruction of the promotion action, including documentation on how candidates were rated and ranked. These records may be destroyed after 2 years."

The district court concluded that "the defendant has presented uncontroverted evidence that such notes are routinely destroyed and in the present situation, they were destroyed long before plaintiff filed her complaint in this action." J.A. 147. There is therefore no reason to draw an adverse inference from the destruction of the notes. Moreover, the documents maintained by the SSA, namely the applications and the Best Qualified Lists, were sufficient to "allow[] reconstruction of the promotion action," as required by the regulation. 5 C.F.R. § 335.103(b)(5). The district court did not err in refusing to draw an adverse inference from the failure to produce the interview notes.

In sum, none of Newsom's arguments on appeal establishes that there was a genuine issue of material fact regarding the defendant's decision to hire Belt over Newsom.

CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>