Dennis DeLONG and Ronald Cole, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. A 82–487 Civ.

United States District Court, D. Alaska.

Oct. 31, 1984.

Donald D. Hopwood of Kay, Christie, Fuld, Saville & Coffey, Anchorage, Alaska, for plaintiffs.

Michael R. Spaan, U.S. Atty., Anchorage, Alaska, for defendant.

## MEMORANDUM AND ORDER

FITZGERALD, Chief Judge.

Plaintiffs DeLong and Cole have brought claims against the government for injuries sustained when they were working as civilian employees at the Adak Naval Station. Marine guards had not been informed that the plaintiffs had permission to be at their job site within a restricted area. The

guards apprehended and held the plaintiffs, and allegedly struck and kicked them inflicting the injuries for which plaintiffs now claim compensation.

The plaintiffs allege liability under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680 (1982), in two different counts in their complaint. First, they claim the marine guards were "investigative or law enforcement officers", thus allowing recovery for intentional torts under 28 U.S.C. § 2680(h). Second, they claim that military personnel other than the marine guards themselves were negligent in failing to inform the guards that the plaintiffs were legitimately within the restricted area.

The government moved to dismiss for lack of subject matter jurisdiction, arguing, first, that the marine guards were not "investigative or law enforcement officers" within the statutory definition, and second, that even a claim sounding in negligence would be barred because it "arises out of" an alleged intentional tort.

The Federal Tort Claims Act (FTCA) confers on district courts

> exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The FTCA provides that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. There are, however, a number of exceptions to this waiver of immunity. There is no liability for "[a]ny claim arising out of assault, battery, false imprisonment, [or] false arrest" unless such claim is the result of "acts or omissions of investigative or law enforcement officers of the United States Government." *Id.* § 2680(h).

In their first claim, plaintiffs DeLong and Cole allege assault, battery, false imprisonment, and false arrest. The government maintains that these particular torts are included within a specific exception to the general waiver of sovereign immunity embodied in the FTCA. Title 28 U.S.C. § 2680(h) provides in relevant part that the FTCA waiver does not apply to:

> Any claim arising out of assault, battery, false imprisonment, false arrest ...: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of [the FTCA] shall apply to any claim arising ... out of assault, battery, false imprisonment, false arrest .... For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

Plaintiffs respond that the marine guards who detained them are "investigative or law enforcement officers" within the meaning of the proviso; the government takes the opposite position that the guards are not investigative or law enforcement officers. Resolution of this conflict depends therefore upon whether the marine guards are empowered by law "to execute searches, to seize evidence, or to make arrests for violations of Federal law." *See Solomon v. United States,* 559 F.2d 309, 310 (5th Cir.1977).

Ordinarily, this issue can be readily determined. In the typical case when an individual complains under the FTCA that he has been victimized by an overzealous exercise of government police power, the citizen will likely have been confronted by an officer who has been statutorily granted the powers necessary to qualify him as a law enforcement officer. *See, e.g.,* 18 U.S.C. § 3050 (powers of Bureau of Prisons officers); *Id.* § 3052 (powers of Federal Bureau of Investigation officers); *Id.* § 3053 (powers of federal marshals and deputies); *Id.* § 3061 (powers of postal in-

spectors); 26 U.S.C. § 7608 (powers of Internal Revenue officers). In such a case, once the relevant statutory provision has been identified, the court need not make further inquiry. *See Hernandez v. Lattimore,* 612 F.2d 61, 64 n. 7 (2d Cir.1979) (18 U.S.C. § 3050). Conversely, several courts have looked to the statutory delegation of powers and have concluded that the relevant officers were not law enforcement officers within the meaning of § 2680(h). *See, e.g., Ames v. United States,* 600 F.2d 183, 185 n. 3 (8th Cir.1979) (28 U.S.C. § 547 does not empower U.S. Attorneys to search, seize, or arrest); *Art Metal-U.S.A., Inc. v. United States,* 577 F.Supp. 182, 185–86 (D.D.C.1983) (5 U.S.C. Appendix I, § 6(a)(4) authorizing Inspector General of GSA to issue subpoenas does not qualify him as law enforcement officer).

In this case there is no specific statutory provision delineating the powers and duties of marine guards from which it can be readily determined whether they are law enforcement officers. Plaintiffs argue that in carrying out their assigned duties, marine guards may on occasion detain individuals, search them for weapons, intelligence gathering equipment, and contraband, and seize such items that are found. Plaintiffs also contend that marine guards receive additional training in the use of deadly force, the rules of engagement, and procedures for the apprehension of individuals. Since guards are authorized to perform such duties, plaintiffs conclude they properly fall within the statutory definition of law enforcement officer provided in § 2680(h).

■ The government acknowledges that marine guards do, on occasion, perform the above-described duties, but it maintains that such duties are merely "incidental" to their primary function as sentries. According to the affidavit of a marine guard officer, the guards' main task is to prevent unauthorized access to restricted areas. Once an unauthorized individual is identified, the guards apprehend and detain him and then immediately notify the Naval Station, Adak Security Department. The indi-

vidual is then turned over to naval security personnel who are independent of the marine barracks and are responsible for law enforcement at Adak. The authority of the guards is thus limited to the initial apprehension and detention of suspected intruders until naval personnel are notified. Since it is the responsibility of naval personnel to maintain law enforcement at Adak, the government concludes that the incidental duties performed by guards should not qualify them as law enforcement officers within the meaning of § 2680(h). I agree.

In order to determine precisely what duties and powers are entrusted to marine guards, I required the government to submit the pertinent regulations that detail their duties. The government submitted an excerpt from the MOS Manual that pertains to guards rated at MOS 8151; for purposes of comparison, the government also submitted an excerpt from the MOS Manual setting forth the duties of military police rated MOS 5811 through 5814, and an excerpt from the local instructions for Adak detailing the duties of naval security personnel.

The regulations submitted by the government confirm the government's position that a marine guard is not a law enforcement officer. A guard's duties in relevant part include:

1. Enforces military regulations and orders.

2. Controls entrances to military posts, station or other establishments.

3. Verifies authenticity of passes and identification cards of military personnel, civilian employees, and visitors afoot or in motor vehicles, entering or leaving installation.

4. Prevents unauthorized removal of government property.

From these listed duties it is evident that, on occasion, a guard will be required to apprehend and detain an individual. It is also consistent with these duties that a guard may have to disarm an individual or temporarily seize an item that the individual is carrying. It is also equally evident

that the regulations do not *authorize* guards to conduct searches, seize evidence, or arrest individuals for violations of federal law.

The distinction propounded by the government between the incidental duties performed by guards and the duties of recognized law enforcement officers can best be demonstrated by comparing the guard's duties as listed above with those of military police and naval security personnel. According to the MOS Manual, the duties that a military police officer is charged with include (depending upon rank):

8. Understands laws and regulations governing military personnel.

9. Completes and issues citations to violators.

10. Understands law and regulations concerning apprehension, search and seizure, rules of evidence and use of deadly force.

&ast; &ast; &ast; &ast; &ast; &ast;

13. Collects, marks, and preserves evidence.

&ast; &ast; &ast; &ast; &ast; &ast;

15. Investigates minor offenses at level appropriate to grade.

16. Applies crime prevention techniques.

&ast; &ast; &ast; &ast; &ast; &ast;

18. Apprehends violators.

&ast; &ast; &ast; &ast; &ast; &ast;

35. Coordinates military police activities and functions with local civil law enforcement agencies.

The Manual demonstrates that unlike marine guards, military police are expressly authorized to investigate offenses, to issue citations, to apprehend violators, and to collect evidence. The military police, in effect, are authorized to perform traditional police functions. But more important, military police are required to understand the laws and regulations concerning arrest, search, and seizure since in the execution of their duties it is expected that incidents will ordinarily arise when they will be re-

quired to perform such traditional law enforcement functions. Marine guards are not required to learn about these areas of law enforcement since they are not called upon to perform traditional law enforcement duties.

Naval security personnel, like military police and unlike marine guards, are also authorized to perform traditional law enforcement duties. The summary of duties of the security department, submitted by the government, provides:

*Security Department* (50). Protects the Naval Station against unlawful entry, sabotage, espionage, theft, rioting or other covert and overt acts, administers area clearance for official visits, *maintains law and order in accordance with current Alaska state and federal laws and naval directives, investigates crimes,* maintains liason and coordinates with federal and state law enforcement agencies.

(Emphasis added). Security personnel duties overlap with the duties of guards to the extent that they both are charged with assuring the security of the naval facility. But security department duties go beyond those of guards and encompass investigation of crimes and maintenance of law and order in accordance with federal law and naval directives.

From the excerpted summaries submitted, it is apparent that military police and naval security personnel perform traditional law enforcement duties including the investigation of crimes, the apprehension of suspects, and the search for and seizure of evidence. These agents would therefore fall within the definition of law enforcement officer set forth in 28 U.S.C. § 2680(h). I find that marine guards, however, are not empowered by law to investigate crimes, to arrest suspects, and to search for and seize evidence of crimes. In order to perform his duties effectively, a guard must be able to exercise the necessary degree of force to detain a suspected intruder and prevent harm to himself as well as the concealment of items forbidden in the Naval Station. To the extent that in

performing his duties a guard must detain an individual and temporarily seize from his custody weapons, intelligence gathering equipment, and contraband, I find that these actions are incidental to his performance of his authorized duties as a sentry which do not include law enforcement functions. The performance of these incidental activities cannot elevate the duties of guards to those of law enforcement officers who are "empowered by law" to perform traditional law enforcement functions.

The conclusion that marine guards are not law enforcement officers within the meaning of § 2680(h) is supported both by the limited number of reported decisions addressing this issue, and by the brief legislative history behind the enactment of the waiver amendment. Very few cases have examined whether military security officers qualify as law enforcement officers for purposes of § 2680(h). In *Solomon v. United States*, 559 F.2d 309 (5th Cir.1977) (per curiam), the plaintiff was stopped outside an air force base exchange by two security employees who suspected her of shoplifting. Without specifically addressing what duties the employees were authorized to perform, the court found that they *were not* empowered by law to execute searches, seize evidence, or arrest individuals for violations of federal law. *Id.* at 310.

In *Bates v. United States*, 517 F.Supp. 1350 (W.D.Mo.1981), on the other hand, the court treated an army military police officer assigned to the Game Warden Section as a law enforcement officer. While it was stipulated by the parties that the officer in question was a law enforcement officer since he possessed the power to make arrests for violations of federal law, *id.* at 1354, this conclusion is otherwise unavoidable given the duties assigned to the officer.

According to the stipulated facts adopted by the court:

> Thornton's duties consisted of the random and selected patrolling of Fort Leonard Wood. Thornton checked permits, assisted sportsmen, and patrolled for fish and game violators, poachers, and trespassers. He was also to search for illegal trash dumping; the destruction, dumping or cutting of trees; and the destruction of wildlife food plots.
>
> ... In addition to his game and wildlife duties set out above, Thornton also had authority to arrest military personnel and to detain civilians for any suspected crimes and could make such arrests or detentions on any and all parts of the Army base.

*Id.* at 1352.

The court in *Daniels v. United States*, 470 F.Supp. 64 (E.D.N.C.1979) similarly treated an air force security policemen as a law enforcement officer. The officer's job description stated that he was "to exercise broad discretion in investigating, detaining, searching and arresting any person suspected of violating federal law or Air Force regulations." *Id.* at 70. The duties of the marine guards in the case at bar more closely resemble the limited duties of the base exchange security employees in *Solomon* rather than the broad law enforcement duties exercised by the officers in *Bates* and *Daniels*.

Furthermore, 28 U.S.C. § 2680(h), waiving sovereign immunity for intentional torts committed by law enforcement officers, was enacted in 1974 in response to a series of unlawful and outrageous "no-knock" raids by federal law enforcement personnel. *See generally*, Boger, Gitenstein, and Verkuil, *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis*, 54 N.C.L.Rev. 497 (1976). Congress could have waived sovereign immunity for the actions of all federal employees, including marine guards, who have the capacity to bring the power and the authority of the federal government to bear against an individual in a manner that would constitute an intentional tort under state law. Congress did not, however, paint with such a broad brush; instead it chose to waive sovereign immunity for certain intentional torts only in limited circumstances. *See Solomon*, 559 F.2d at 310. Sovereign immunity continues to apply unless one of the specific

intentional torts is committed by an officer "empowered by law" to execute searches, seize evidence, or arrest an individual for violations of federal law. Since marine guards are without such authority, I conclude that they do not fall within the statutory definition of law enforcement officer.

As to the plaintiffs' negligence claims, the first question is whether such a claim "aris[es] out of" the alleged assault, battery, and/or false imprisonment by the marine guards. Even though the claim is worded in terms of negligence, 28 U.S.C. § 2680(h) bars any claim "arising out of" these intentional torts. Several courts have emphasized the significance of the language used. Congress could have barred only claims *for* assault, but instead barred all claims *arising out of* assault. *See, e.g., Collins v. United States*, 259 F.Supp. 363, 364 (E.D.Pa.1966).

■ Generally state law must be looked to in order to determine whether a plaintiff's claim constitutes a cause of action for negligent conduct. This is so since the FTCA applies "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, to the extent that the issue goes to the applicability of the FTCA, federal law applies. In *Ramirez v. United States*, 567 F.2d 854 (9th Cir.1977) (en banc), the court was called upon to decide whether a government physician's failure to warn constituted a "misrepresentation," because claims arising out of misrepresentation are barred under the FTCA as are claims arising out of assault. 28 U.S.C. § 2680(h). The court stated: "Questions of interpretation under the exclusion provisions [of the FTCA] are controlled by federal law." 567 F.2d at 856.

In interpreting the "discretionary function" exception to the FTCA found in 28 U.S.C. § 2680(a), the United States Supreme Court has held: "[W]e think it improper to limit suits by federal prisoners because of the restrictive state rules of immunity. Whether a discretionary function is involved is a matter to be decided under 28 U.S.C. § 2680(a), rather than under state rules relating to political, judicial,

quasi-judicial, and ministerial functions." *United States v. Muniz*, 374 U.S. 150, 164, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963).

Therefore, in interpreting the "arising out of" language in 28 U.S.C. § 2680(h), I must look to federal law for guidance rather than to the law of Alaska. A number of federal courts, both at the district court level and at the court of appeals level, have addressed this issue. However, so far as I am aware, there are no reported decisions directly on point out of either the Ninth Circuit or out of district courts within the Ninth Circuit. For guidance then I must look to other circuits.

The majority rule appears to be that where a claim alleges negligence by a government official in failing to properly control or supervise another government employee, who in turn commits an intentional tort, even the negligence claim is barred because it "arises out of" the intentional tort for which suit is prohibited by 28 U.S.C. § 2680(h). *E.g., Naisbitt v. United States*, 611 F.2d 1350 (10th Cir.1980) (suit barred where allegation was that government negligently failed to supervise and curtail two airmen who committed a series of rapes and murders); *Hughes v. Sullivan*, 514 F.Supp. 667 (E.D.Va.1980) (suit barred where allegation was that government, with knowledge of indecent conduct on part of postman, negligently retained postman on his route where he took indecent liberties with infant plaintiffs), *aff'd*, 662 F.2d 219 (4th Cir.1981); *see also Panella v. United States*, 216 F.2d 622 (2d Cir. 1954) (dictum) (suit against government on negligence theory would be barred where subsequent assault was committed by government employee). These courts make a distinction based on whether the tortfeasor is a government employee or not. Suit is barred only in the former case. When the tortfeasor is a nonemployee, suit against the government for negligence is allowed. *See, e.g., Naisbitt*, 611 F.2d at 1356.

The Third Circuit has adopted the opposite view, permitting negligence suits against the government even where the

tortfeasor was a government employee. *Quinones v. United States*, 492 F.2d 1269 (3d Cir.1974) (suit for negligent maintenance of personnel records permitted where government subsequently disseminated inaccurate information to prospective employers causing injury to reputation; court held claim was not one "arising out of" defamation which would be prohibited); *Gibson v. United States*, 457 F.2d 1391 (3d Cir.1972) (suit for failure to exercise due care for safety of instructors in job training program permitted where trainee subsequently attacked the instructor).

The rule in the Fifth Circuit is not entirely clear and the few related opinions do not satisfactorily establish that court's position. *See Underwood v. United States*, 356 F.2d 92 (5th Cir.1966) (court cited *Panella* for proposition that § 2680(h) bars claims for assaults by government agents which the government negligently fails to prevent, but permitted suit where airman had killed his former wife; no discussion of why airman was not "government agent"); *United States v. Shively*, 345 F.2d 294 (5th Cir.) (court disallowed suit because, under state law, government negligence in issuing weapon did not proximately cause shooting injury by sergeant; court then "also conclude[d]" that the claim did "arise out of" the assault and was therefore barred), *cert. denied*, 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965); *Fair v. United States*, 234 F.2d 288 (5th Cir.1956) (suit in negligence permitted where plaintiff claimed that government had promised to notify plaintiff's decedent when air force officer was to be released from hospital, but did not so notify, and officer subsequently shot plaintiff's decedent; § 2680(h) not discussed).

Other circuit courts, including the Ninth Circuit, appear not to have specifically addressed the question. The Ninth Circuit has permitted suit for negligence against the government where the subsequent assault was by a non-employee, *Jablonski v. United States*, 712 F.2d 391, 395 (9th Cir. 1983), but the court has not faced the government employee situation.

Although the Ninth Circuit has not interpreted the "arising out of" language in 28 U.S.C. § 2680(h) in the context of a subsequent assault, battery, or false imprisonment by a government employee, it has interpreted the phrase in the context of the exceptions for misrepresentation and defamation. The court has sometimes allowed suit and sometimes precluded suit, depending upon the particular facts. *See, e.g., S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. United States*, 692 F.2d 1205 (9th Cir.1982) (court permitted suit for negligent inspection of airplane plans, holding that claim arose from negligent inspection rather than from any ensuing misrepresentation in resultant certificate), *rev'd on other grounds*, —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Hoesl v. United States*, 629 F.2d 586 (9th Cir.1980) (per curiam) (where plaintiff was suspended from his job based on psychiatric report, suit barred under libel and slander exception despite argument that cause of harm was negligently conducted psychiatric exam).

Some of the cases following the majority rule which would bar the plaintiffs negligence claim in the present case may be distinguished. In several of the cases, the only allegation of negligence was a general "failure to supervise" which, it was argued, resulted in the subordinate employee committing an assault. In these cases, the courts frequently noted that the separate and independent acts of the intentional tortfeasor were intervening forces of such magnitude as to minimize or sever the connection between the government's alleged negligence and the resulting injury. *See, e.g., Naisbitt*, 611 F.2d at 1356, *Hughes*, 514 F.Supp. at 670. In a Third Circuit case permitting suit, the court based its decision in part on its observation that

The attack upon [the plaintiff] was a foreseeable consequence of the Government's failure to exercise due care *under the circumstances* and, therefore, it *is not such an intervening act as will sever the necessary causal relation between the negligence and [the plain-*

*tiff's] injuries....* Under such circumstances, the attack was not an intervening act and the tort did not arise out of the assault and battery. It had its roots in the Government's negligence.

*Gibson,* 457 F.2d at 1395 (emphasis in original).

In the case at bar, the plaintiffs do not merely allege a general failure on the part of government officials to supervise the marine guards. Instead, the claim is that higher government officials failed in their specific responsibility to notify the guards that civilian workers would be in the restricted area. This allegation of specific acts or omissions by higher officials is quite separate from allegations of assault committed by the marine guards. This fact situation distinguishes the case before me from many of the cases in which suit was barred.

The Alaska Supreme Court, when faced with a similar provision in Alaska's government claims statute, Alaska Stat. § 09.50.-250, turned to federal decisional law interpreting 28 U.S.C. § 2680(h) for guidance. The Alaska court discussed and evaluated the cases on both sides of the question, and adopted the Third Circuit's position permitting suit as representing the "better reasoned" line of cases. *Zerbe v. State,* 578 P.2d 597, 600 (Alaska 1978). In *Zerbe,* a state court judge had not been informed that a complaint against Zerbe had been dismissed, so the judge issued a warrant for Zerbe's arrest. Zerbe was arrested, taken to jail, and detained. His complaint alleged negligence by state employees in failing to inform the judge of the dismissal.

The court permitted his suit, holding that "it was negligent record keeping, rather than false imprisonment, which caused Zerbe's injuries." *Id.* at 601. Although the Ninth Circuit looks to federal rather than state law in interpreting the FTCA exclusion provisions, and thus Zerbe is not binding, it does represent a reasoned evaluation of the arguments and prior case law on both sides of the issue. *See also* Note, *Section 2680(h) of the Federal Tort Claims Act: Government Liability for the Negligent Failure to Prevent an Assault and Battery by a Federal Employee,* 69 Geo.L.J. 803 (1981) (advocating abandonment of the employee/nonemployee distinction and arguing in favor of permitting suit).

■ In summary, I conclude the plaintiffs' suit should be allowed. Given no Ninth Circuit case on point, and a conflict among the other circuits, I should follow the reasoning which best serves the policy of the statute. Given the specific facts in this case, in which the plaintiffs allege a specific failure to notify by higher government officials, I believe the majority rule discussed earlier may not necessarily be applicable. Moreover, other cases in which the majority rule was applied to bar suit can be distinguished on their facts.

If suit is permitted, the plaintiffs will still have to establish a case in negligence under Alaska state law. *See* 28 U.S.C. § 1346(b). The government, in its Supplemental Brief on Negligence Standards Under State Law, argues in part that it had no duty of care towards the plaintiffs, and therefore that the suit should be dismissed. I conclude the existence or nonexistence of a duty of care is irrelevant to the initial decision as to whether suit is barred by 28 U.S.C. § 2680(h). Rather, I think the duty of care issue is one to be resolved at trial, along with other questions of breach of duty, proximate cause, and injury to plaintiffs.

For the reasons stated I conclude that plaintiffs' first claim for relief, based on the "investigative or law enforcement officers" provision, must be dismissed on the government's motion. I conclude that the government's motion to dismiss the plaintiffs' second claim, grounded in negligence, must be denied.

IT IS SO ORDERED.