803 F.2d 1502
 88 A.L.R.Fed. 1, 55 USLW 2285
 George BENNETT, his behalf/behalf Gene George/minor,
Kathleen Bennett, her behalf/behalf Gene
George/minor, Sarah Benally, her
behalf/behalf Turman Benally,
minor/et al.,
Plaintiffs-
Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 85-2142.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 11, 1986.
Decided Nov. 7, 1986.
 
 Dale H. Itschner, Flagstaff, Ariz., for plaintiffs-appellants.
 Elizabeth Jucius Dunn, Susan A. Ehrlich, Asst. U.S. Attys., Phoenix, Ariz., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before GOODWIN, NORRIS and BRUNETTI, Circuit Judges.
 GOODWIN, Circuit Judge:
 Outraged parents brought an action for damages on behalf of their sexually abused children, and appeal a judgment for the government based on the assault and battery exception to the Federal Tort Claims Act (FTCA).
 Terry Lee Hester applied for a teaching position at a Bureau of Indian Affairs boarding school. He admitted on his employment application that he had been arrested and charged with violating Oklahoma Statutes title 21, Sec. 22 (1978) ("Outrage to Public Decency"), and that a valid bench warrant was outstanding on that charge. No investigation was ever made and he was sent out to the boarding school as a teacher. Hester eventually kidnapped, assaulted, and raped several children who were enrolled at the BIA school. Hester committed these acts while off duty in his own quarters. He was convicted on eleven felony counts in connection with these acts and is now serving time. Any investigation of Hester's admissions on his employment application would have shown that Hester had been charged with acts of child molestation similar to those he committed at the BIA school.
 Sixteen parents and eight children brought this FTCA action for damages caused by the government's negligence which resulted in the molestation of the children. On this appeal, the government concedes that failing to investigate was negligent, that hiring Hester was negligent, and that permitting Hester to continue in his job after his conduct gave notice to his supervisors that he was molesting children was negligent. The sole question is whether the retention of sovereign immunity for claims "arising out of assault [or] battery," 28 U.S.C. Sec. 2680(h) (1982), insulates the government from liability where its own negligence was the proximate cause of the injury sued on. We hold that it does not.
 The scope of the exclusion for claims arising out of assault or battery was discussed in dictum in United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), in which the mother of a murdered army private sued the army for failing to supervise the soldier who murdered her son. The Supreme Court denied liability on two grounds. In Part II A, four justices said that "arising out of" in the statute indicated a Congressional intent to bar damage claims for supervisory negligence when there would have been no claim without an assault or battery. 105 S.Ct. at 3042-3043. In Part II B, eight members of the Court agreed that the Feres doctrine barred FTCA claims on behalf of a soldier injured by another soldier. Id. at 3043-3044. Justice Powell did not participate.
 
 
 1
 Because the authority of Part II A is diluted by the clear military-service basis for the denial of tort relief, we decide this case without depending on the views expressed in Shearer. We respect the statement of four members of the Court in Shearer, but it would be speculative to treat that statement as the decision of a case. Our review is in accord with the Second Circuit's treatment of the same problem. See Johnson v. United States, 788 F.2d 845 (2d Cir.1986).
 
 
 2
 In our circuit, where the government's negligence consisted in failing to exercise due care in dealing with a mental patient known by responsible government agents to be homicidal, we held that the assault exception does not excuse the government's negligence. See Jablonski ex rel. Pahls v. United States, 712 F.2d 391, 395 (9th Cir.1983). In Jablonski, we observed, by way of dictum, that the assault and battery exception applies to employees. In the case now before us, Hester was an employee.
 
 
 3
 Returning to Jablonski, we noted that the policy underlying subsection 2680(h) was to insulate the government from liability for acts it was powerless to prevent or which would make defense of a lawsuit unusually difficult. 712 F.2d at 395. Assaults, batteries and other crimes are especially difficult to prevent when there is no known history of similar behavior. At common law, they were "independent, intervening causes." See United States v. Shively, 345 F.2d 294 (5th Cir.1965). We concluded that because the government had notice and could have prevented the crime in the Jablonski case by the exercise of due care by government employees, the government was liable for its own negligence. Jablonski was not a respondeat superior case. The Jablonski rationale, of course, would also lead to a conclusion that the government should be liable in this case. This claim is likewise not founded upon respondeat superior, but upon the same kind of negligent supervision, after notice, that created liability in Jablonski.
 
 
 4
 Part II A of Shearer distinguished between cases involving negligent failure to prevent the intentional torts of government employees and those involving negligent failure to prevent the intentional torts of nonemployees. Shearer suggests that government liability is waived only where the tortfeasor is a nonemployee, saying, "[i]n enacting the Federal Tort Claims Act, Congress' focus was on the extent of the Government's liability for the actions of its employees." 105 S.Ct. at 3043 (emphasis in original). On this view, Congress may have intended to accept liability for negligent management, resulting in assaults and batteries by inmates and patients under governmental supervision, but not to accept liability for the assaults and batteries of its employees no matter how negligently they were hired and supervised. The historical evidence is far from clear.
 
 
 5
 First, the evidence contains no explanation why Congress would undertake to waive immunity for negligently supervising federal wards while retaining immunity for intentional acts by negligently supervised federal employees.
 
 
 6
 Second, the plain language, "arising out of," applies equally to batteries by federal employees and by nonemployees. Shearer correctly notes that "arising out of assault or battery" connotes something broader than an alternative phrasing such as "for assault or battery." 105 S.Ct. at 3042. The broader reading does nothing, however, to differentiate between liability for the government's own negligence and liability based solely on respondeat superior.
 
 
 7
 Third, broad immunity is inconsistent with the primary purpose of the Federal Tort Claims Act, to provide a forum for the resolution of claims against the federal government for injury caused by the government's negligence. See Dalehite v. United States, 346 U.S. 15, 24-25, 73 S.Ct. 956, 962, 97 L.Ed. 1427 (1953). To construe the assault and battery exception to defeat claims based on negligence when the negligence amounts to almost reckless disregard in the hiring and the placement of a known sex offender in charge of children would violate 28 U.S.C. Sec. 2674 (1982) by treating the federal government differently from private entities hiring and supervising teachers.
 
 
 8
 As the government observes, we generally construe waivers of sovereign immunity narrowly. However, narrow construction is a tool to ascertain the intent of Congress. The issue in statutory interpretation is ultimately "one of congressional intent, not whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." Touche Ross & Co. v. Redington, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979); see also Dalehite, 346 U.S. at 30-31, 73 S.Ct. at 965 (the waiver in the FTCA is entitled to a construction that will carry out its aim). The defendant has directed us to nothing in the legislative history or in the language of the statute that evinces any congressional purpose to distinguish between supervised employees and supervised nonemployees who harm innocent victims because of negligent supervision.
 
 
 9
 The only distinction between the government's alleged negligence in this case and Jablonski is that Hester was on the government payroll and Jablonski was not. Negligence was a proximate cause of the injury in both cases. The fact questions require further proceedings consistent with this opinion. We note that this result is consistent with that reached in other jurisdictions. See Shearer v. United States, 723 F.2d 1102 (3rd Cir.1984) (finding liability), rev'd on other grounds, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); Underwood v. United States, 356 F.2d 92, 100 (5th Cir.1966); Loritts v. United States, 489 F.Supp. 1030 (D.Mass.1980). Even some cases compelled to deny liability by their circuit's precedent concede that the distinction between government employees and nonemployees is irrational. See Wine v. United States, 705 F.2d 366, 367 (10th Cir.1983).
 
 
 10
 While we have attempted to resolve this case in accordance with precedent, it would be idle to deny the importance of the assault and battery exclusion. The Supreme Court ultimately could decide that the government is not liable for batteries by negligently hired employees on duty or off duty even though the negligence in hiring and supervision is clear. Until it does so hold, however, we believe that our Jablonski case requires us to remand the case for further development of the facts. On remand, the trial court should determine to what extent the sexual molestation took place when Hester was off duty and to what extent the particular circumstances of the employment relationship created the opportunity for these crimes.
 
 
 11
 Reversed and remanded for further proceedings.