**Michael N. SHERIDAN and Mary A. Sheridan, Appellants,**

v.

**The UNITED STATES, Appellee.**

No. 86–3961.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1986.

Decided July 20, 1987.

Michael J. Kator (Irving Kator, Kator, Scott & Heller, Washington, D.C., on brief), for appellants.

Gary P. Jordan, Asst. U.S. Atty. (Breckenridge L. Willcox, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, and HALL and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Michael N. Sheridan and Mary A. Sheridan, his wife, brought this action against the United States alleging that United States Navy personnel negligently failed to prevent a naval enlisted man from firing a rifle into their automobile, injuring Mrs. Sheridan. The district court dismissed the Sheridans' action, holding that it was barred by provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, as interpreted by this court in *Hughes v. United States*, 662 F.2d 219 (4th Cir.1981), *aff'g Hughes v. Sullivan*, 514 F.Supp. 667 (E.D.Va.1980). We affirm.

Robert W. Carr was an enlisted medical aide in the United States Navy stationed at the Bethesda Medical Center in Maryland. On the evening of February 6, 1982, Carr became totally inebriated after consuming a large quantity of wine, rum and other alcoholic beverages. He packed some of his possessions, including a .22 calibre rifle and ammunition, into a uniform bag and left the barracks. Some time later, three naval corpsmen found Carr unconscious on the floor of one of the hospital buildings and attempted to take him to the emergency room. As the corpsmen carried him, Carr slipped several times, falling to the floor and on one occasion down a flight of concrete steps. Before they reached the emergency room, Carr regained consciousness, broke away from the corpsmen, grabbed his uniform bag from one of them, and displayed the barrel of his rifle. The corpsmen fled, taking no further action either to subdue Carr or to alert any other authority that Carr was inebriated and armed. Carr left the building and ended up near the public street in front of the hospital. He began shooting at passing vehicles, hitting the Sheridans' automobile and injuring Mrs. Sheridan.

The Sheridans brought this action under the provisions of the Federal Tort Claims Act, which waives sovereign immunity for certain tort claims against the federal government. Section 2680(h), however, establishes an exception to the waiver providing, among other things, that it does not apply to "[a]ny claim arising out of assault,

battery...." 28 U.S.C. § 2680(h). In *Hughes* we affirmed the district court's dismissal of a claim against the government because it fell within this exception. There, a postal employee, while on his route, lured two young girls into his postal truck and committed sexual indecencies. He had previously pled guilty to a similar offense. The parents of the children brought an action against the government under the Federal Tort Claims Act alleging the postal supervisor was negligent in allowing the employee to remain in a position where he came into contact with young children. The district court, reasoning that the cause of action arose from the intentional act of the employee and not from the negligence of the supervisor, held the claim barred by § 2680(h).

In *Thigpen v. United States*, 800 F.2d 393 (4th Cir.1986), we again affirmed the district court's dismissal of a claim against the government as barred by § 2680(h). In *Thigpen*, a naval corpsman had committed sexual indecencies with two minor girls while they were hospitalized in a naval hospital. An action was brought on behalf of the children contending that the Navy negligently failed to supervise the offending corpsman. There, too, the district court reasoned that the injury resulted from the intentional tort of the corpsman and not from a lack of supervision by the government.

■ The Sheridans argue that their case is distinguishable from *Thigpen* and *Hughes*. They contend, first, that the actions of the three naval corpsmen in the present case constituted *per se* negligence because they violated a Navy regulation requiring personnel to report violations of another regulation that prohibits the possession of firearms on base. The Sheridans argue that Congress did not intend to immunize *"per se"* negligence from liability through the intentional tort exception to waiver of immunity, but intended the exception to apply primarily to cases involving government supervision. We find no merit to the Sheridans' contention that we should establish a principle that would eliminate application of the § 2680(h) exception when *"per se"* negligence is involved.

■ The Sheridans also argue that Carr's status as an enlisted naval man and, therefore, a government employee, should irrelevant to the issue of the government's immunity *vel non* from liability for negligently failing to prevent the injury.[1] They correctly assert that the shooting at the Sheridans' vehicle was not connected with Carr's job responsibility or duties as a government employee. The Sheridans further assert that if Carr had not been a government employee, a claim would undoubtedly lie against the government and § 2680(h) would be inapplicable. *See Rogers v. United States*, 397 F.2d 12 (4th Cir. 1968) (holding § 2680(h) inapplicable where probationer alleged that negligence by United States marshal allowed non-government employee to assault and torture probationer). They contend it is anomalous to deny their claim simply because the corpsmen were negligent in the handling of a government employee rather than a private citizen.[2]

As we have stated, § 2680(h) is an exception to the general waiver of sovereign

---

1. The dissent asserts that a focus on the employment status of the assailant "opens the door to a range of arguments concerning the 'scope of employment'" while its proposed rule would not. At 828–829. The proposed rule would not eliminate an inquiry into the "scope of employment," however, it would simply shift it to the employees whose alleged negligence allowed the assault to occur.

2. The dissent attempts to reconcile this perceived anomaly. It proposes a rule that would allow suits arising out of assaults by government employees so long as the asserted negligence by the government employees is not a failure to supervise the assailant. Such a solution does not reconcile the cases, it simply would create an exception to the principle that § 2680(h) bars suits arising out of assaults by government employees. An "anomoly" would still exist—persons assaulted by a government employee would be treated differently depending on whether they could allege negligence by other government employees that allowed the assault to occur but that did not constitute negligent supervision of the assailant. We prefer to follow established Fourth Circuit precedent and hold the present claim barred by § 2680(h).

immunity contained in 28 U.S.C. § 1346(b). The § 1346(b) waiver, of course, relates to negligent or wrongful acts or omissions of government employees. In negligent supervision cases a plaintiff's cause of action is directed not at the person who inflicted the injury, but at the government employees who, by failure to supervise, did not prevent the harm. Explicit in *Thigpen, Hughes* and similar cases [3] is the principle that § 2680(h) bars actions alleging negligence of the supervising employees when the underlying tort is an assault or battery by a government employee. *Thigpen,* 800 F.2d at 394; *Hughes,* 514 F.Supp. at 670. We see no sufficiently distinguishing difference between the facts of *Thigpen* and *Hughes* and the facts here to justify applying a different rule.

In view of the above, the decision of the district court is affirmed.

AFFIRMED.

HARRISON L. WINTER, Chief Judge, dissenting:

The Federal Tort Claims Act (FTCA) established a scheme under which the Federal Government waives sovereign immunity for suits based on its employees' negligence, but not on their intentional misconduct. Cases which involve conduct that is purely one type or the other are thus easy to resolve. Problems arise when *both* negligent and intentional conduct play a role in producing the resulting injury. Where government negligence leads to intentional misconduct—e.g., an assault and battery—by a private party, the courts generally allow suits against the United States, based on its negligence. Note, "Section 2680(h) of the Federal Tort Claims Act: Government Liability for the Negligent Failure to Prevent an Assault and Battery by a Federal Employee," 69 Geo.L.J. 803, 804 (1981). But where the same government negligence results in an assault and battery by a *federal employee,* the majority opinion in this case holds that the United States is immune from suit by virtue of the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h). In other words, the majority holds that the employment status of the assailant determines when the United States will be liable for its negligent misconduct. I do not think that this result is supported by the language or purpose of the FTCA, or by this court's previous opinions regarding § 2680(h). I think that the government should be held subject to suit in all cases where its alleged liability is independent of the assailant's employment status—i.e., where a court can isolate a government duty and source of negligence that is based on something other than the fortuitous circumstance that the government happens to be the assailant's employer.

There are two lines of decision in this Circuit regarding the § 2680(h) assault and battery exception, neither of which directly addresses the circumstances of this case.

*Hughes v. Sullivan,* 514 F.Supp. 667 (E.D.Va.1980), *aff'd sub nom. Hughes v. United States,* 662 F.2d 219 (4 Cir.1981), involved a postal worker who sexually assaulted two young children. Plaintiffs based their FTCA suit on the theory that the government was negligent in hiring and retaining this employee. Nevertheless, the district court held that § 2680(h) barred the claim because the assailant was a federal employee, while recognizing that the result would differ had the assailant not been employed by the government. 514 F.Supp. at 669–70. We affirmed. *Thigpen v. United States,* 800 F.2d 393 (4 Cir.1986), dealt with plaintiff patients who were sexually abused by a corpsman at the Beaufort Naval Hospital. Although plaintiffs premised their FTCA claims on the government's negligence in hiring and supervising the corpsman, we held these claims barred as arising out of assault or battery. *Id.* at 394. We noted that "a different rule may obtain" where the assailant is not a federal employee. *Id.,* n. 3.

A different rule did obtain in *Rogers v. United States,* 397 F.2d 12 (4 Cir.1968),

---

3. *See Johnson by Johnson v. United States,* 788 F.2d 845, 850 (2d Cir.1986); *Satterfield v. United States,* 788 F.2d 395, 399 (6th Cir.1986); *Garcia v. United States,* 776 F.2d 116, 118 (5th Cir. 1985); *Wine v. United States,* 705 F.2d 366, 367 (10th Cir.1983).

where a United States marshal allowed plaintiff-probationer to spend the night with an "unsavory" character—not a federal employee—who proceeded to torture the plaintiff. We reversed a summary judgment in the government's favor, ruling that "[w]hen an agency of the United States voluntarily undertakes a task, it can be held to have accepted the duty of performing that task with due care." 397 F.2d at 14. We thus remanded for a determination of the existence and possible breach of such a voluntarily assumed duty. Section 2680(h)'s exception for intentional torts was deemed "inapplicable": "If there is a valid claim here, it is founded on negligence even though assault or false imprisonment may be collaterally involved." *Id.* at 15.

I think it illogical to say that the assault and battery claim was only "collaterally involved" in *Rogers* whereas it was considered the essence of the claim in *Hughes* and *Thigpen* and thus barred by § 2680(h). It simply makes no sense to assert that a negligence claim "arises out of" an assault and battery claim only when the assailant happens to be on the United States payroll. The derivation of an injury or cause of action should not turn on the employment status of the offender. *See Bennett v. United States*, 803 F.2d 1502, 1504 (9 Cir. 1986); 69 Geo.L.J. at 808–09. Rather, the source of a claim depends on the nature of the wrongful behavior in question.

As the majority opinion concedes (*ante* at 822), *Hughes* and *Thigpen*, as well as the other cases relied upon by the majority (*ante* at n. 1), are all cases where the purported government negligence was premised solely on claims of negligent hiring and/or supervision. The same was true in *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).[1] Such claims are essentially grounded in the doctrine of respondeat superior. In these cases, the government's liability arises, if at all, *only* because of the employment relationship. If the assailant were not a federal employee, there would be no independent basis for a suit against the government. It is in this situation that an allegation of government negligence can legitimately be seen as an effort to "circumvent" the § 2680(h) bar; it is just this situation—where government liability is possible only because of the fortuity that the assailant happens to receive federal paychecks—that § 2680(h) was designed to preclude. *See Shearer*, 105 S.Ct. at 3042–43; *Hughes*, 514 F.Supp. at 668, 669–70; *Panella v. United States*, 216 F.2d 622, 624 (2 Cir.1954).

On the other hand, where government liability is independent of the assailant's employment status, it is possible to discern two distinct torts: the intentional tort (assault and battery) and the government negligence that precipitated it. Where no reliance is placed on negligent supervision or respondeat superior principles, the cause of action against the government cannot really be said to "arise out of" the assault and battery; rather it is based on the government's breach of a separate legal duty. *Shearer v. United States*, 723 F.2d 1102, 1106–08 (3 Cir.1983), *rev'd on other grounds*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) ("if an assault and battery occurred as a 'natural result' of the government's failure to exercise due care, the assault and battery may be deemed to have its roots in negligence and therefore it is within the scope of the FTCA"); *Gibson v. United States*, 457 F.2d 1391, 1395–97 (3 Cir.1972) (§ 2680(h) not applicable where intentional misconduct was the foreseeable consequence of government negligence: "Under such circumstances, the attack was not an intervening act and the tort did not arise out of the assault and battery. It had its roots in the Government's negligence"); *Loritts v. United States*, 489 F.Supp. 1030, 1031–32 (D.Mass.1980) (citing *Gibson* and *Rogers*); 69 Geo.L.J. at 816. Thus, the assertion in *Hughes*, 514 F.Supp. at 668–70, and *Thigpen*, 800 F.2d at 395, that the negligence claim arose out of the assault, is inapposite where the claim against the

---

1. Eight Justices decided the case on *Feres* doctrine grounds. The discussion of § 2680(h) by Chief Justice Burger, joined only by Justices White, Rehnquist and O'Connor, was merely dicta. Justice Powell did not participate.

government is not premised on a theory of negligent supervision or respondeat superior. "Though it may be true that the assault and battery serves to attach consequences to the government's negligence, under traditional tort analysis the negligence remains the legal cause of the plaintiff's injury if the assault and battery by the employee was a foreseeable consequence of that negligence." 69 Geo.L.J. at 808 n. 33. *Accord, Thigpen,* 800 F.2d at 399 n. 10 (Murnaghan, J., concurring) ("The occurrence of the actual assault and battery thus serves only to establish the extent of the plaintiff's injury, not to establish the hospital's breach of duty").

We have used precisely this type of analysis in FTCA cases where the assailant is not a government employee. Thus, in *Rogers,* we invoked traditional tort principles when examining whether the government owed, and breached, a duty to transport and provide subsistence to the plaintiff with due care. The focus of the opinion was the existence of a government duty—not the presence of a subsequent intentional tort. The employment status of the assailant was irrelevant, not because the assailant was a private party, but because we could isolate a government duty and source of negligence that was independent of the government's status as employer, i.e., liability was not based on a claim of negligent supervision.

The principle that I perceive would allow suits against the government when a plaintiff's negligence claim is not based on a theory of negligent supervision or respondeat superior. Several other circuits support this view. *See, e.g., Johnson by Johnson v. United States,* 788 F.2d 845, 853 n. 8 (2 Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986); *Gibson,* 457 F.2d 1391 (3 Cir.1972); *DeLong v.*

*United States,* 600 F.Supp. 331 (D.Alaska 1984); *Loritts,* 489 F.Supp. 1030 (D.Mass. 1980).[2] It is also the basis for the view advocated by the concurring opinion in *Thigpen:* a negligence claim does not "arise out of" assault and battery when based on "the breach of a clear and recognizable affirmative duty...." 800 F.2d at 398 (Murnaghan, J., concurring). Although much of the analysis in that opinion is persuasive, the *Thigpen* majority aptly criticized the proferred standard as overly "elastic" and potentially limitless. 800 F.2d at 395.[3] Indeed, although the concurrence considered *Thigpen* to involve such a clear affirmative duty, the majority there properly recognized that the cause of action was based solely on a claim of negligent supervision, *id.* at 394–95.

The two factors isolated by plaintiffs to distinguish this case from *Hughes, Thigpen, Shearer,* etc., provide an excellent means for refining the standard advocated by the concurrence in *Thigpen.* I regret to say that the majority opinion in this case summarily dismisses these factors, without any attempt to address the analysis so carefully laid out by the plaintiffs.

### A.  Irrelevance of employment status

Where, as here, the circumstances of a case are such that the government's negligence would render the United States liable if the assailant were not a federal employee, the fact that the assailant just happens to be federally employed should not be permitted to immunize the United States from suit. The test to be applied is straightforward: would the government be liable if the assailant was not a government employee?  If yes, § 2680(h) is not applicable.

---

**2.**  The Ninth Circuit has gone even farther and permitted suits against the government, premised on negligent supervision, as long as the government had notice of the employee's violent tendencies. *Bennett,* 803 F.2d 1502 (9 Cir.1986). *Accord Shearer,* 723 F.2d 1102 (3 Cir.1983).

**3.**  The *Thigpen* majority also argued that there was no basis in the Act for distinguishing between situations where the government owes an "affirmative duty" and when it does not—all

claims "arising out of assault [or] battery" are barred. 800 F.2d at 395–96. This criticism, however, misses the point: the distinguishing factor advocated by the concurrence was intended as a means for determining when a claim can legitimately be said to "arise out of" an assault or battery. This approach is sound, in principle, but requires further refinement, as set out *infra.*

There are several advantages to this approach. It satisfies judicial concerns that plaintiffs will circumvent the § 2680(h) bar by simply framing an assault and battery claim in terms of negligence on the part of the government. *See, e.g., Hughes,* 514 F.Supp. at 668; *Thigpen,* 800 F.2d at 394–95; *Shearer,* 105 S.Ct. at 3042. The government will be subject to suit only in cases where it would be liable for the assault by a private party; i.e., only where government liability is premised on something *other than* the employment relationship. Thus efforts to disguise a respondeat superior claim will be precluded. *See Loritts,* 489 F.Supp. at 1031–32 (where government undertakes task of providing escorts to plaintiff and companions, it must perform task with due care; where attack occurred when plaintiff was walking without an escort, "[t]his is not ... the situation where a plaintiff by virtue of artful pleading seeks to circumvent section 2680(h)").

In addition, this approach will prevent the elevation of form over substance in FTCA litigation. Plaintiffs A & B may suffer the same injury, as the result of the same government negligence. Yet under the government's approach, because of the fortuity that plaintiff A's assailant happened to be a federal employee, A's suit would be barred while B's would not. This situation is particularly troubling since one purpose of the FTCA was to establish a scheme providing uniformity of treatment, unlike the system of private bills that it was replacing. *See* Jayson, 1 Handling Federal Tort Claims: Administrative and Judicial Remedies, § 66.03 (1986).

In this case, had it been a private citizen who took the weapons wrongfully stored in Mr. Carr's room, or had it been a private citizen who the three corpsmen found wandering drunk and brandishing a rifle, the government's liability would be unquestioned. The majority opinion implicitly concedes as much. There is no persuasive reason for the disparate treatment which the government advocates.[4] As explained

in *Loritts,* "[t]he Court does not agree that the government can escape liability under section 2680 because of the fortuitous nature of the circumstances following its negligence." 489 F.Supp. at 1032 n. 3. *See also Johnson,* 788 F.2d at 853 n. 8 ("[t]he negligence alleged ... [in *Loritts* ] was independent of the government's supervision of its employees and the fact that an employee, rather than a non-employee, committed the assault was 'fortuitous' ").

In its brief and at oral argument the government acknowledged the irrationality of its interpretation of § 2680(h)—a critical concession in light of the well-established principle that, "whenever possible," statutes should be construed to avoid creating "untenable distinctions and unreasonable results." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982). Plaintiffs' alternative avoids this anomaly, and properly focuses on the wrongfulness of the government's conduct. The irony in the government's position is that, in an effort to avoid subjecting the government to suit *just because* of its role as employer, it goes to the opposite extreme and offers immunity from suit for precisely the same fortuitous circumstance.

B. Presence of *per se* negligence which leads to precisely the injury that the violated statute or regulation was designed to prevent

Plaintiffs also seek to distinguish cases invoking the intentional tort exception by arguing that they do not, in contrast to the present suit, involve the violation of government regulations—i.e., negligence *per se.* Plaintiffs' brief correctly points out that "*Hughes* does not answer the question of whether Congress intended the government to be free of liability when the injury which arose out of its *per se* negligence was actuated by the foreseeable commission of an intentional tort." The value of this factor in distinguishing the other cases is supported by *Rogers'* pro-

---

**4.** If anything, it makes more sense to hold the government liable for intentional torts of its employees—rather than private parties—over

whom it exercises at least some control. *Gibson,* 457 F.2d at 1394; 69 Geo.L.J. at 814 n. 63, 821.

nouncement that voluntary assumption of a task entails the duty to perform it with due care. 397 F.2d at 14. *Accord Loritts,* 489 F.Supp. at 1031. Surely the passage of regulations concerning weapon storage and safety constitutes such a voluntary assumption of duty.

The presence of a *per se* negligence claim effectively answers the criticisms levied at an approach like that of the *Thigpen* concurrence. It provides a bright-line test for the existence of what might otherwise be a nebulous "affirmative duty." It also satisfies concerns about circumvention of § 2680(h) by ensuring that government liability is based on an independent tort, and not on the employment relationship alone. As with the first factor, this one properly focuses attention on the government's negligent conduct, rather than on the fortuity of the assailant's employment status.

Superficially, some of the language in *Hughes, Thigpen* and *Shearer* may appear to preclude the approach just outlined. Yet, on closer inspection, the principles announced in those cases are perfectly compatible with, and arguably better served by, the position advocated by plaintiffs.

There are two basic criticisms of plaintiffs' approach that derive from *Hughes, Thigpen* and *Shearer.* First, it is contended that the "sweeping language" of § 2680(h) "excludes any claim *arising out*

*of* assault or battery." *Shearer,* 105 S.Ct. at 3042 (emphasis in original). However, this literalist interpretation is belied by the concession in *Shearer, Thigpen* and *Hughes* that § 2680(h) does not bar the identical claim against the government when the assailant is not an employee. As noted above, it makes no sense to say that negligence claims "arise out of" assault and battery claims only when the assailant happens to be a federal employee, *Bennett,* 803 F.2d at 1504; The derivation of a claim cannot rationally be said to turn on the employment status of the assailant.

Moreover, statutory language "should not be read in isolation from the context of the whole Act," but rather with an eye towards the legislation's "object and policy." *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962). *Accord,* Jayson, § 69. In this case, the legislative goal of providing a uniform system for compensating the victims of government negligence[5] is met only through the approach advocated by plaintiffs. Indeed, both *Hughes* and *Panella* explicitly rejected, as "out of keeping with the rest of the act," a literal interpretation of "arising out of" that would have barred negligence suits where the assailant was not federally employed. *Panella,* 216 F.2d at 624; *Hughes,* 514 F.Supp. at 669 (quoting *Panella*).[6]

**5.** *See* Jayson, §§ 66, 66.03, 69; 69 Geo.L.J. at 812 & n. 49.

**6.** The Supreme Court, sensitive to Congress' desire to use the FTCA to "mitigate [the] unjust consequences of sovereign immunity," has explicitly rejected, in the FTCA context, the traditional approach of strictly construing statutory waivers of immunity. Jayson, §§ 67, 69 (quoting *Feres v. United States,* 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950)). *Accord* 69 Geo.L.J. at 813. *E.g., Kosak,* 465 U.S. 848 at 853 n. 9, 104 S.Ct. 1519, 1523 n. 9, 79 L.Ed.2d 860 (rejecting strict construction approach as "unhelpful," and noting that "unduly generous interpretations of the exceptions [to the waiver of sovereign immunity] run the risk of defeating the central purpose of the statute"); *Block v. Neal,* 460 U.S. 289, 298, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983) ("'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced'") (citations omitted). *See* also *Kielwien v. United States,*

540 F.2d 676, 681 (4 Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976) ("The [FTCA] is remedial and should be liberally construed to grant the relief contemplated by Congress"); *Bennett,* 803 F.2d at 1504 ("broad immunity is inconsistent with the primary purpose of the Federal Tort Claims Act, to provide a forum for the resolution of claims against the federal government for injury caused by the government's negligence"). Indeed, the judicial trend in recent years have been toward an expansion of government liability via increasingly liberal interpretations of the FTCA. Note, "From *Feres* to *Stencil:* Should Military Personnel Have Access to FTCA Recovery," 77 Mich.L. Rev. 1099, 1101, 1104, 1106 (1979).

Although there are some Fourth Circuit opinions that have adhered to the stricter traditional approach, these cases rely primarily on decisions that either preceded the recent liberalization, or that are outside the unique FTCA context. *See, e.g., Thigpen,* 800 F.2d at 394.

In addition, while it may make sense to view a claim for negligent supervision as "arising out of" the assault, because the sole basis for this vicarious liability is an employee's assaultive conduct, this cannot be said where the government negligence is a distinct tort, independent of the employment relationship. *See Rogers*, 397 F.2d at 15; *Gibson*, 457 F.2d at 1395; *Loritts*, 489 F.Supp. at 1032. Thus, even under a literal reading of the statute, § 2680(h) would allow a suit where the cause of action is not based on a claim of negligent supervision.[7]

The second criticism of plaintiffs' approach, derived from *Hughes, Thigpen* and *Shearer*, concerns the policy goals underlying § 2680(h). Of the three principal objectives motivating creation of the exceptions to the FTCA, only the desire to avoid United States "exposure ... to liability for excessive or fraudulent claims" is implicated by the assault and battery exception of § 2680(h). *Kosak v. United States*, 465 U.S. 848, 858, 104 S.Ct. 1519, 1525, 79 L.Ed.2d 860 (1984). *See* 69 Geo.L.J. at 811 n. 46.[8] This objective, however, is easily met by plaintiffs' standard, which ensures the existence of an independent tort as the basis for federal liability. As the Second Circuit recently pointed out, the fear of excessive government liability is relevant in cases where liability is premised solely on

the employment relationship; i.e., where, unlike this case, the claim is one for negligent supervision. *See Johnson*, 788 F.2d at 853. Indeed, the thrust of Chief Justice Burger's opinion in *Shearer*, 105 S.Ct. at 3042–43, concerns the problems associated with claims of negligent supervision/respondeat superior—i.e., imposing liability on the government *solely* because of its status as employer. *See Johnson*, 788 F.2d at 850 (describing *Shearer*).[9]

The criteria advocated by plaintiffs cannot legitimately be faulted for failure to provide bright lines for application. Whether there has been a violation of a regulation or statute—negligence *per se* —involves a straightforward inquiry. Whether the government would be liable had the assailant been a private party also entails a relatively simple assessment. The courts currently have little trouble litigating FTCA cases involving private assailants. All that is required here is a determination of whether there is any legal basis— apart from its status as employer—for finding the government to be negligent.

The government's alternative for determining the applicability of § 2680(h), relying on the employment status of the assailant, would be no easier to apply. To focus on employment status opens the door to a range of arguments concerning the 'scope

---

7. The government also argues, citing *Hughes* and *Shearer*, that a negligence claim should be deemed to "arise out of" an employee's assault when the assault is the "immediate" cause of the injury to plaintiff. However, this standard would mean that a negligence claim based on a non-employee's assault—also the "immediate" cause of injury—would be barred by § 2680(h). Yet the courts have clearly rejected that possibility.

The "immediacy" of a factor contributing to injury is not the litmus test for causation under basic principles of tort law. Multiple factors, some more immediate than others, can all be legal causes of an injury as long as the intervening events—even where intentional or criminal—are reasonably foreseeable. Rest. (2d) Torts, § 302 A–B (1965), *cited in Courtney v. Remler*, 566 F.Supp. 1225, 1232 (D.S.C.1983), *aff'd*, 745 F.2d 50 (4 Cir.1984); 69 Geo.L.J. at 808 & n. 34, 825–27. Moreover, this "immediacy" standard was developed in the context of negligent supervision claims, where it was considered necessary to avoid circumvention of § 2680(h) and the resulting expansion of gov-

ernmental liability—problems that are solved with the standard advocated by plaintiffs.

8. The other two are (1) freeing certain government activities (i.e., those involving the delicate exercise of discretion) from the threat of civil suits, and (2) foreclosing this new federal remedy in cases where adequate relief was already available. *Kosak*, 465 U.S. at 858, 104 S.Ct. at 1525; 69 Geo.L.J. at 811 n. 46.

9. Even Chief Justice Burger's statement that Congress was concerned with a "certain type of factual situation—deliberate attacks by Government employees," 105 S.Ct. at 3042, must be read in this context. This statement immediately follows the contention that Congress did not distinguish *between* negligent supervision and respondeat superior claims, and it precedes the conclusion that "Congress did not hint that it thought the Government's liability for an assault and battery turned on the adequacy of supervision or warnings." Clearly, the focus is avoidance of vicarious government liability.

of employment'—e.g., does a battery committed by an off-duty employee constitute a battery by a government employee for purposes of § 2680(h)? [10] *See* 69 Geo.L.J. at 818–20; Gardner, "The Federal Tort Claims Act," 16 Clearinghouse Rev. 509, 515 (Nov. 1982); Jayson, Chapter 8. The criteria advocated by plaintiffs, by rendering the assailant's employment status irrelevant, will actually avoid this quagmire.[11]

*Conclusion*

The majority opinion reads the intentional tort exception to the FTCA, § 2680(h), in such a way as to make the employment status of the assailant determinative of when the United States will be liable for its negligent misconduct. The opinion gives short shrift to the factors isolated by plaintiffs for distinguishing this case from our earlier FTCA decisions. In so doing, it reaches a result that comports neither with logic, the statute, nor fundamental notions of equity. I thus respectfully dissent. I would reverse the judgment for defendant and remand the case for trial.

**10.** In fact, under the majority's ruling, the case could well be remanded for examination of this very issue, since the corpsman here was apparently off-duty at the time when he committed the assault. *See Thigpen,* 800 F.2d at 394 n. 2 (court's conclusion that claim was barred by assault and battery exception obviated need to examine district court ruling on "scope of employment" requirement of 28 U.S.C. § 1346(b)).

**11.** The majority asserts that the rule I would adopt would not eliminate an inquiry into the "scope of employment," but merely shift the inquiry to those employees whose alleged negligence allowed the assault to occur. I respectfully suggest that the majority misconceives the nature of the rule that I propose.

As explained *supra,* I read § 2680(h) to permit suits against the United States, in circumstances where a government employee has committed an assault and battery, whenever plaintiffs can isolate a government duty, and breach of that duty, independent of the government's status as employer. To satisfy this requirement, plaintiffs must establish a failure to perform adequately some duty which the government has either voluntarily assumed or had imposed upon it by legislative or executive order. In other words, plaintiffs must establish that government employees, acting within the scope—indeed obligations—of their employment, would have acted in a manner that could have averted the ensuing assault and battery. There is no place for an inquiry into whether particular negligent employees acted within the scope of their employment; indeed, the very basis of the plaintiff's case is a failure of any government employee so to act. This approach thus avoids the "scope of employment" quagmire which the majority's alternative invites.

Even if the preceding analysis were incorrect, it would be no indictment of the rule that I have proposed. At worst, this rule merely fails to eliminate the type of "scope of employment" inquiry that the majority concedes is necessitated by its approach. Thus, while my proposal may prove no easier to apply, it certainly entails no greater difficulties than the alternative advocated in the majority opinion.